25784.  NEUHOFF *v.* SWIFT & COMPANY *et al.*

*Ben C. Williford,* for plaintiff.

*Harold Hirsch, Marion Smith, A. S. Clay, E. P. Rogers,* for defendants.

Sutton, J.  Arthur Neuhoff brought suit against Swift & Company and E. S. Papy, alleging that they had injured and damaged him in the sum of $75,000, by reason of the following facts:  On January 5, 1931, and at all times thereafter, as mentioned in the petition, E. S. Papy was general manager of Swift & Company, with authority to employ and discharge persons working with that company.  The petitioner was the owner of one hundred shares of the stock of the Neuhoff Company, which owned and operated the White Provision Company, of which petitioner was assistant general manager at a salary of $500 per month.  He had never known any form of business except the packing business in which White Provision Company was engaged, of slaughtering and preparing for food various kinds of animals.  On January 5, 1931, the Neuhoff Company sold the White Provision Company to Swift & Company, the consideration being unknown to petitioner; and that for and in consideration of "the interest your petitioner had in said White Provision Company and Neuhoff Company, approximately five thousand dollars, and for further consideration that your petitioner would not, after said sale as aforesaid, enter any kind or form of competition with it, and the additional consideration of five hundred dollars per month, to be paid each and every month for and during a period of fifteen years from the aforesaid date, this defendant, Swift & Company, employed your petitioner to continue with said plant as manager of the purchasing department thereof."  In consideration of said hiring the petitioner "transferred all of his rights, title, equity, and interest in said White Provision Company and Neuhoff Company to said defendant, Swift & Company," and executed and delivered to it an agreement not to enter into any form of business in competition with the defendant.  Petitioner would not have conveyed his "interest in White Provision Company and Neuhoff Company save and ex-

cept for the consideration herein set out; and had they not employed your petitioner as aforesaid, the transaction would not have been consummated." In accordance with said agreement petitioner began working for the defendant, and so continued until May 17, 1933, when without cause the defendant unlawfully discharged him. At that time he had already executed and delivered to Swift & Company all his rights, title, equity, and interest in and to the said White Provision Company, and his agreement not to enter into competition with Swift & Company in the packing business. Such assignment and agreement, "with the exception of the limited consideration herein set out," was, together with the monthly salary to be paid him, in consideration that Swift & Company was to hire, and did hire, him for a period of fifteen years. Because of his experience being exclusively with reference to operating packing plants he is totally unprepared to enter into any kind of business or employment, and under his aforesaid agreement he is deprived of following the only kind of business he is prepared to perform, and he has been forced to seek other occupations for a livelihood, but, being unprepared, is not able to obtain other employment or enter other profitable lines of business, and throughout the remainder of the fifteen years he will be unable to earn more than $25 per month. By reason of the defendant wrongfully breaching the contract, he has been deprived of valuable interest, employment, and property, and has been injured and damaged in the amount sued for. His discharge by the defendants was a wilful and deliberate fraud on him, for no reason whatever save and except to hurt, injure, and damage him, and was done after the defendants had secured from him all the deeds and assignments to his interest in the aforesaid properties, and relinquishment of his right to operate in the aforesaid territory. It is a fraud on him on the part of the defendants, after securing all of his rights and interests as aforesaid, and damaging to him, now to fail and refuse to carry out their portion of the contract of employment. By reason of having released his right to operate for the time and in the territory stated, and the further reason that he knows no other business except the packing and live-stock business in which he may find lucrative employment, his wrongful discharge and breach of the contract is a fraud on and an irreparable injury to him, and by reason of said facts he is entitled to

the full amount sued for, and all the facts set out are the proximate cause of his damages.

Swift & Company filed a demurrer on the grounds that no cause of action was set out; that the alleged parol agreement of employment appears from the face of the petition to constitute an effort to add to or vary a valid written contract, which can not be done by parol; and that it appears that the alleged contract is barred by the statute of frauds, in that it relates to an alleged agreement for employment for more than a year. Papy filed a demurrer on the same grounds, and on the further ground that it did not appear from the petition that he was a party to the alleged contract. There were several special grounds of demurrer. The plaintiff filed an amendment alleging that his action against the defendants was brought in tort; that Papy was an agent of Swift & Company, and was general manager in full charge of the White Provision Company, and, for no reason except to assist in defrauding the plaintiff of his contract of employment and valuable property rights as set out in the petition, Papy conspired with and procured Swift & Company to discharge the plaintiff and breach its contract of employment; that Swift & Company, acting on the advice, representations, and procurement of Papy, did, in furtherance of said collusion and conspiracy, without any cause or legal right whatever, discharge the plaintiff on or about May 17, 1933; that, by reason of Papy illegally and wrongfully counseling, commanding, and procuring Swift & Company to discharge the plaintiff, and Swift & Company, with full knowledge of all the facts set out, acting on the wrongful and fraudulent advice, procurements, and collusions, discharging him, the plaintiff was deprived of his valuable property rights as set out in his petition, and was injured and damaged, by reason of the breach of the contract of employment, in the full amount sued for. The amendment was allowed subject to demurrer. Swift & Company filed a demurrer to the amendment on grounds stated as follows: "1. The said amendment seeks to add a new and distinct cause of action, in that the petition as originally filed plainly and distinctly seeks to set out a case ex contractu, and the said amendment seeks to change the action into an action ex delicto. 2. In the event the foregoing demurrer is sustained and the amendment not allowed, the defendant renews its demurrer heretofore filed upon each and

every ground thereof. 3. In the event the said amendment is allowed, the defendant demurs to the petition as amended, upon the ground that the same is wholly insufficient to show any liability in tort on the part of this defendant, and the petition as amended abandons any effort to establish liability of any other kind." Papy filed a demurrer to the amendment on grounds stated as follows: "1. There is nothing in the original petition sufficient to constitute enough to amend by, with respect to this defendant. 2. If said amendment is not allowed, defendant renews his demurrer to the original petition, upon each and every ground thereof. 3. If the said amendment is allowed, defendant demurs to the petition as amended, upon the ground that the same is insufficient in law to set out or show any cause of action against this defendant. 4. If the said amendment is allowed, the said petition is insufficient to show a cause of action against this defendant, for the reason that it is predicated upon the alleged procuring by him of a breach of a contract, and the petition fails to show any valid, legal contract which it is alleged this defendant caused to be breached. In explanation of this ground it is pointed out to the court that the supposed contract appears from the allegations of the petition to be an effort to set up by parol additional terms varying, adding to, and modifying a valid written agreement." There were also special grounds of the demurrer. Upon a hearing the court rendered judgment that the general grounds of demurrer be sustained and the case dismissed. The special grounds of demurrer were not ruled on. The plaintiff excepted.

To test the general demurrer, which admits only facts well pleaded, it is first necessary to arrive at a fair construction of the petition. The "interest" alleged to have been held in the White Provision Company is not shown to be a real or substantial one. It is alleged, however, that the plaintiff owned one hundred shares of stock in the Neuhoff Company, of the approximate value of $5000. The names "White Provision Company" and "Neuhoff Company" import corporations. *Mattox* v. *State,* 115 *Ga.* 212, 219 (41 S. E. 709); *Holcombe* v. *Cable Co.,* 119 *Ga.* 466 (46 S. E. 671); *Perkins Co.* v. *Shewmake,* 119 *Ga.* 617 (46 S. E. 832); *Hunnicutt* v. *Reed,* 149 *Ga.* 803 (102 S. E. 421); *Tifton Compress Co.* v. *Robinson,* 31 *Ga. App.* 350 (3) (120 S. E. 701). The total shares of outstanding stock in Neuhoff Company not

being alleged, the plaintiff is not shown to be more than a minority stockholder. It is alleged that the *Neuhoff Company* sold the White Provision Company to Swift & Company. That being true, the White Provision Company was presumably an operating corporation which was owned and controlled by the Neuhoff Company, a corporation, through the latter's ownership of the capital stock of the former. It is not shown that the Neuhoff Company ceased to exist after the sale. The White Provision Company was not necessarily its only asset. The "interest" of the plaintiff in the White Provision Company being nothing but a reflection of the plaintiff's interest in the Neuhoff Company, it was nothing that did not pass with the sale of the White Provision Company by the Neuhoff Company transferring its stock therein to Swift & Company. "The word 'sold' imports not a mere proposition to sell, but a consummated contract of sale." 4 Words & Phrases (2d), 611. After the consummated sale by Neuhoff Company, whatever interest had been held in White Provision Company was converted into cash, or, if the agreement was for other personal property or for realty, into something to which the interest of the plaintiff reached by virtue of his ownership of stock in the Neuhoff Company. His employment with White Provision Company was not anything that could be called a marketable interest. His position was not one that he could retain and control merely because he was a minority stockholder in the Neuhoff Company. Though he had a salary of $500 per month with White Provision Company, it is not shown that he had employment for more than from month to month. The particular contract which it is alleged was breached was the oral agreement with Swift & Company to employ the plaintiff for a period of fifteen years. Assuming, as he alleges, that it was the inducement to the plaintiff in agreeing to the sale of the White Provision Company, it was, as admitted in the brief of his counsel, separate and distinct from the agreement or contract of sale between the Neuhoff Company and Swift & Company. The plaintiff being a minority stockholder in the Neuhoff Company, his assent to the sale of the White Provision Company was not really necessary; and upon the transfer of the stock by the Neuhoff Company, the purchaser, Swift & Company, became the owner thereof, free from any demand of the plaintiff. The only interest he could assert would be that repre-

sented by his shares of stock in the Neuhoff Company, into the assets of which went the unnamed consideration received by that corporation from Swift & Company. Hence the plaintiff's allegation that he "transferred all of his rights, title, equity, and interest in said White Provision Company and Neuhoff Company to said defendant Swift & Company" must be construed to mean, with respect to White Provision Company, only that the interest was transferred through the transfer by Neuhoff & Company of the shares of stock in the White Provision Company. With respect to his interest in the Neuhoff Company, it was not alleged that its business was purchased by Swift & Company by any method. Hence, if Swift & Company contracted for the interest of the plaintiff in the Neuhoff Company, it was not, so far as the petition shows, involved in the agreement between the Neuhoff Company and Swift & Company, but was a separate and distinct agreement between Swift & Company and the plaintiff. Also, the allegation that when he was discharged by Swift & Company he had "already executed and delivered to Swift & Company all his rights, title, equity, and interest in and to the said White Provision Company" can be interpreted to mean only that the transfer of such rights, if any, had taken place by the act of the Neuhoff Company. This must follow from his allegation that the *Neuhoff Company* sold White Provision Company, and from the fact that his only interest therein, as hereinbefore construed, was by reason of the shares of stock held by him in the *Neuhoff Company*. He had no direct interest in the White Provision Company that he could sell. If he sold his interest, his shares of stock in the Neuhoff Company, that would be a matter of contract between him and Swift & Company.

The above discussion has been necessary for the purpose of showing that under a proper construction of the petition the oral agreement was between parties who were not the same as those entering into the contract of sale of the White Provision Company; that Swift & Company purchased the interest in White Provision Company, not from the plaintiff, but from the corporation in which he was a minority stockholder; that if Swift & Company obtained any right or interest of the plaintiff in and to the *Neuhoff Company,* it was acquired from him under a separate agreement of sale of *his shares of stock*. The oral agreement on which he bases his

case involved employment for more than one year, and it is argued by the defendants that it comes within the statute of frauds and is unenforceable, and therefore that the employer had the right, at its pleasure, to end the services of the plaintiff. The plaintiff asserts that the agreement is binding, because: (1) Though a parol agreement, it is a good contract based on a consideration arising out of a written agreement. (2) That it is taken out of the statute of frauds, because he rendered such part performance that it would be a fraud on him not to enforce the contract. He asserts that the case of *Indiana Truck Corporation v. Glock,* 46 *Ga. App.* 519 (168 S. E. 124), supports his contention, and it is urged with equal ardor by the defendants that the case has no application. It was there held: "It is true that a prior or contemporaneous parol agreement, which contradicts, varies, or otherwise modifies a written agreement between the same parties and pertaining to the same subject-matter, is merged into the written agreement; and that where parties have reduced to writing what appears to be a complete and certain agreement, it will, in the absence of fraud, be conclusively presumed that the writing contains the entire contract. *Bullard* v. *Brewer,* 118 *Ga.* 918 (45 S. E. 711); *LaGrange Female College* v. *Cary,* 168 *Ga.* 291 (147 S. E. 390); *Smith* v. *Loftis,* 43 *Ga. App.* 354 (158 S. E. 768). However, all prior or contemporaneous parol agreements between the same parties are not necessarily merged into the written contract. A distinct collateral oral agreement, not inconsistent with the written one, is not so merged. 13 C. J. 593, § 616. It is a well-settled rule that one contract may be the consideration of another, the inducement to the execution thereof; and where an independent parol agreement has been made as the inducement to the making of a written contract, the former may be proved and enforced, though not referred to in the latter." (Citing.) In that case it was alleged that the president and general agent of corporation A, who was also the president and general agent of corporation B, orally agreed with the plaintiff, while acting in his official capacity, that if the plaintiff would sign a written contract with corporation B as its sales agent in certain territory, the plaintiff would receive from the two corporations a commission of one per cent. on the trucks manufactured and sold by corporation A and by or through corporation B in certain territory. Acting on

that inducement, the plaintiff entered into a written contract of employment with corporation B. The assets and business of corporation B were subsequently taken over and merged into corporation A, the latter assuming all contracts and liabilities of corporation B. The plaintiff filed suit against the two corporations for unpaid commissions. It was properly held by this court that the oral agreement was the inducement to the written contract. In that case the matter of employment was covered by the written contract, and the oral agreement was held to be between the same parties and not inconsistent with the written agreement. An examination of the original record in that case discloses that the defense there set up by the demurrer was to the effect that the contract sued on was a contemporaneous oral agreement which undertook to change or vary the terms of the written agreement between the same parties; whereas in the present case the demurrer, among other things, sets up that the alleged oral agreement was for employment for a period of more than one year, and therefore was unenforceable. The written contract is alleged to have been between Neuhoff Company and Swift & Company, and the oral agreement between the plaintiff and Swift & Company. Although the oral agreement by the plaintiff to enter into the contract of sale, if he could enter into it, would constitute a consideration for the promise of Swift & Company to give him employment, it would not necessarily amount to a contract which is valid and enforceable. Not all contracts are enforceable. It is provided by the statute of frauds (Code, § 20-401) : "To make the following obligations binding on the promisor, the promise must be in writing, signed by the party to be charged therewith, or some person by him lawfully authorized, viz.: . . Any agreement (except contracts with overseers) that is not to be performed within one year from the making thereof." It is provided (§ 20-402) that the above shall not apply in the following cases: "1. When the contract has been fully executed. 2. Where there has been performance on one side, accepted by the other in accordance with the contract. 3. Where there has been such part performance of the contract as would render it a fraud of the party refusing to comply, if the court did not compel a performance." It is clearly shown by many decisions that by the fraud above referred to is meant some injury or loss sustained in performing in

part for the benefit of the party against whom the injured one complains. It is within this exception to the statute that the plaintiff contends that his case is brought. A careful consideration of the petition as amended does not show such injury or loss to the plaintiff. It is not alleged that he had a permanent position at the time he entered into the oral agreement. Apparently he was working under a month-to-month agreement at a salary of $500 per month. There is no allegation that he would have been able to draw such salary or any salary for a longer time than he was retained by Swift & Company. There is no allegation that he had any other offer of employment at the time he made the oral agreement, or that he had any offer while partly performing the agreement with Swift & Company. There is no allegation that he incurred any expense or loss whatever. It is true that he alleges that, having signed an agreement not to enter into the packing business in competition with Swift & Company, he is reduced to the extremity of having to seek occupations in which he can not hope to earn more than $25 per month; but this loss is more imaginary than real. If the oral agreement does not bind Swift & Company because it is not valid, then the agreement of the plaintiff falls with it, and he would be at liberty to pursue whatever line of business his ability qualifies him to follow. If his allegations mean that, in connection with the oral agreement, he sold and delivered his shares of stock in Neuhoff Company, it is not shown that he did not receive full value for the same. No loss of any kind is shown. The alleged oral agreement was not a binding contract; the employer had the right, at its pleasure, to end the employment of the plaintiff; and it is not shown that it would be a fraud on him not to enforce the oral agreement. Therefore it is not within the exceptions to the statute of frauds. E. S. Papy, who, as alleged, was manager of Swift & Company and vested with full authority to hire and discharge employees, had the right to recommend to his employer that the services of the plaintiff be terminated, and in so recommending and counseling with Swift & Company he did not render himself liable to the plaintiff. In the view we take of the case it is not necessary to decide whether the action is ex contractu or ex delicto, or whether the cause of action was changed by the amendment; because in any event the oral agreement was not binding

and enforceable against the defendants. The court did not err in sustaining the general demurrer and in dismissing the action. *Judgment affirmed.* *Jenkins, P. J., and Stephens, J., concur.*