## A97A0516. BRANNEN/GODDARD COMPANY v. COLLIN EQUITIES, INC. et al.

(489 SE2d 106)

MCMURRAY, Presiding Judge.

Brannen/Goddard Company ("BG") — a licensed realtor — brought an action against Collin Equities, Inc. ("Collin") and Montgomery Estates, Inc. ("Montgomery") to recover monthly lease commissions BG allegedly earned under oral promises Warren Pfeiffer extended on behalf of Collin and Montgomery. BG allegedly relied on these promises in brokering a 1991 lease amendment which extended a 48-month lease ABB Process Automation, Inc. ("Process Automation") executed in September 1988 for space at Montgomery's office park. Defendants denied liability and counterclaimed for commissions paid to BG under Process Automation's original 48-month lease, alleging these commissions are the office park's previous owner's sole obligation. After the parties filed opposing motions for summary judgment, the undisputed evidence revealed the following:

In September 1988, BG's broker, Mitchell Brannen, procured a 48-month lease providing Process Automation with space at Atlanta Business Services' ("ABS") office park, Northwood Commons. ABS paid BG $17,000 when Process Automation occupied the space and agreed to pay BG five percent of Process Automation's monthly rent through the term of the lease, which expired on December 31, 1992. ABS also agreed to pay BG the same monthly commission if, in the future, BG successfully negotiated an extension, expansion or renewal of the Process Automation lease. ABS paid BG according to this agreement until April 1991.

After discovering Collin's advertisement to foreclose ABS's interest in Northwood Commons in March 1991, BG entered into an interim agreement with Collin to manage the office park. This interim agreement went into effect on April 2, 1991, when Collin acquired Northwood Commons at a foreclosure sale conducted via powers conferred in a Deed to Secure Debt.[1] Collin transferred the property to Montgomery immediately after the foreclosure sale and, a day later (April 3, 1991), Montgomery and BG entered into an exclusive agency agreement providing BG with rights to procure new tenants at Northwood Commons. This agreement includes a "merger" or "entire agreement" clause and provides as follows: "Notwithstanding the appointment of [BG as leasing agent], Owner reserves for itself, exclusively, the right to . . . negotiate the renewal of or the exercise of options to renew Tenant Leases existing from time to time, whether or not [BG] was originally involved in the negotiations

---

[1] Collin and BG entered into a more comprehensive property management agreement sometime after September 5, 1991.

of such Tenant Lease. . . . If Owner desires, on a case-by-case basis, to have [BG's] assistance in connection with any of the above referred to negotiations, then Agent and Owner shall agree in writing upon the commission or compensation to which [BG] shall be entitled with respect to such activity prior to the rendering of any such assistance. . . ."

After the foreclosure sale, defendants' agent, Warren Pfeiffer, agreed to honor ABS's promise to pay BG monthly commissions for the Process Automation lease and, in April or May 1991, Pfeiffer, "on behalf of Montgomery Estates, requested that [BG] assist Montgomery Estates in negotiations with Process Automation for an extension or renewal of the Lease, including an expansion of the leased premises. . . . On behalf of Montgomery Estates, [Pfeiffer] agreed that [BG's] compensation for the Process Automation lease [extension] would be the same as originally agreed to by [ABS, i.e., five percent of Process Automation's monthly rent through the term of the lease extension]." Pfeiffer informed BG's agent, Mitchell Brannen, that a contract evidencing this agreement was unnecessary because "we'll just use the one we already have[; i.e., the commission agreement ABS executed in 1988 promising to pay BG five percent of Process Automation's monthly rentals through the term of Process Automation's original lease]."

In reliance on Pfeiffer's oral promises, BG negotiated with Process Automation and, on "August 5, 1991, Process Automation signed an agreement dated June 17, 1991 entitled 'Amendment to Lease' (the 'Amended Lease'). The Amended Lease was [to begin] on January 1, 1993, after the termination of the Original Lease, and was to continue for a period of 36 months."

On August 21, 1991, Pfeiffer executed a document on behalf of Montgomery entitled, "COMMISSION AGREEMENT," whereby Montgomery agreed to pay BG "a commission equal to two percent (2%) of the aggregate rentals [under the Process Automation lease amendment]." Although this lump-sum commission agreement does not specify whether it replaces or partially satisfies Montgomery's five percent commission agreement to BG (extended by Pfeiffer), Mitchell Brannen deems the agreement proof of Montgomery's separate obligation to pay a commission to the individual BG leasing agents who represented the landlord's and the tenant's respective interest.[2]

On April 10, 1992, Montgomery stopped paying BG five percent of Process Automation's monthly rentals and sold Northwood Com-

---

[2] Although defendants do not cite evidence disputing Mitchell Brannen's understanding, Brannen does not articulate the details of this separate commission agreement during his deposition.

mons to a new owner. Because the new owner did not agree to pay BG monthly commissions for the Process Automation lease transactions, BG was not paid commissions for the remaining term of the Process Automation lease and lease amendment.

This appeal followed the trial court's order denying BG's motion for summary judgment and granting defendants' motion for summary judgment. *Held*:

BG contends undisputed evidence of Warren Pfeiffer's oral promises, and its agents' performance and reliance thereunder, demands summary judgment for the liquidated amount of the unpaid commission that accrued during the remaining terms of Process Automation's lease and lease amendment. See OCGA § 13-3-44 (a). Defendants counter by asserting that the "merger" or "entire agreement" clause in Montgomery's and BG's exclusive agency contract, as well as the parol evidence rule, bars proof and enforcement of Warren Pfeiffer's oral promises. Defendants also argue that Pfeiffer did not have authority to extend any promise outside Montgomery's and BG's exclusive agency agreement and that any such oral agreements are unenforceable for lack of consideration.[3]

Defendants' lack of consideration argument is without merit because the exclusive agency agreement between Montgomery and BG did not require BG to negotiate the Process Automation lease amendment and, according to the undisputed evidence, BG performed these services only because Pfeiffer promised to pay BG a five percent commission for the remaining term of Process Automation's lease and lease amendment. See *Diamondhead Corp. v. Robinson*, 144 Ga. App. 60 (1) (240 SE2d 572). The same circumstances reveal the frailty of defendants' "merger" clause and "parol" evidence assertions. That is, since Pfeiffer's verbal promises did not adversely or materially alter Montgomery's and BG's rights and obligations under the exclusive agency agreement, Pfeiffer's promises (to pay BG for procuring the original Process Automation lease and negotiating the lease amendment) constitute part of a collateral, independent and distinct contract which may be proved by parol evidence. And "[t]hough [defendants assert that Pfeiffer's oral promises constitute] a collateral contemporaneous agreement between the parties, its independence and its lack of inconsistency with the written contract cause it not to become merged with the written contract. *Forsyth Mfg. Co. v. Castlen*, 112 Ga. 199, 211 (37 SE 485); *Brinson v. Franklin*, 177 Ga. 727 (1) (171 SE 287); *Indiana Truck Corp. v. Glock*, 46 Ga. App. 519 (1) (168 SE 124); *Neuhoff v. Swift & Co.*, 54 Ga. App. 651 (2-a, b)

---

[3] Although defendants asserted a Statute of Frauds defense in the trial court, this assertion is not urged on appeal.

(188 SE 831). See also *Cottle v. Tomlinson*, 192 Ga. 704, 712 (16 SE2d 555); 20 Am. Jur. 992, § 1140; 32 CJS 970, § 997." *Langenback v. Mays*, 205 Ga. 706, 711 (1, 2) (54 SE2d 401). The parties' remaining assertions are resolved by the undisputed fact that defendants ratified Warren Pfeiffer's oral promises by accepting benefits thereunder and by paying BG the amount Pfeiffer promised (while it benefited defendants) for negotiating the Process Automation lease amendment. "Ratification may occur by the principal's partial payment on an allegedly unauthorized agreement. *Pioneer Concrete Pumping Svc. v. T & B Scottdale Contractors*, 218 Ga. App. 596, 597-598 (462 SE2d 627) (1995); *Holliday Constr. Co. v. Sandy Springs Assoc.*, 198 Ga. App. 20, 21 (400 SE2d 380) (1990). When an agent acts in excess of his authority, 'the principal may not ratify in part and repudiate in part; he shall adopt either the whole or none.' OCGA § 10-6-51." *Thomas Register of American Manufacturers v. Pronto Systems Electronic Packaging*, 221 Ga. App. 779, 780 (471 SE2d 235).

Since defendants failed to establish a legally sufficient defense to Pfeiffer's commission agreement promises, the trial court erred in granting defendants' motion for summary judgment and denying BG's motion for summary judgment as to liability. The trial court, however, did not err in denying BG's motion for summary judgment as to damages because there is no conclusive proof regarding the amount of BG's damages.

Montgomery's August 21, 1991, agreement to pay BG a two percent lump-sum commission for procuring the Process Automation lease amendment does not specify whether it is separate from, or whether it replaces or partially satisfies, the five percent commission agreement between BG and Montgomery. And while Mitchell Brannen testified during his deposition that he believes this contract proves nothing more than Montgomery's unrelated obligation to pay the individual leasing agents involved in the Process Automation lease amendment negotiations, Brannen does not articulate the basis of his understanding or the details of this purportedly separate commission agreement. These circumstances raise genuine issues of material fact as to BG's alleged damages. To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c).

*Judgment affirmed in part and reversed in part. Beasley and Smith, JJ., concur.*

DECIDED JULY 15, 1997.

*Harman, Owen, Saunders & Sweeney, Perry A. Phillips,* for
appellant.
*Alston & Bird, Lori P. Hughes,* for appellees.