A01A1288. SUN-PACIFIC ENTERPRISES, INC. v. GIRARDOT et al.

(553 SE2d 638)

MIKELL, Judge.

Based on written and oral representations made by defendant Sun-Pacific Enterprises, Inc., through its agent Joseph Sunn, that lot 1 in the Costa Lanier subdivision bordering Lake Lanier would be conveyed to the homeowners' association for community use, plaintiffs Steven and Mary Christine Girardot purchased lots 2 and 3 and built their dream home. Sun-Pacific then razed a portion of lot 1 and listed it for sale. The Girardots filed suit for injunctive relief, actual damages, and attorney fees. Sun-Pacific demanded a jury trial but failed to produce any witnesses.[1] The jury awarded the Girardots $16,000 in damages. The trial court granted a permanent injunction prohibiting Sun-Pacific from conveying the lot to any entity other than the homeowners' association. Sun-Pacific's motions for new trial and judgment notwithstanding the verdict were denied, and the trial court awarded the Girardots $19,711.13 in attorney fees. Sun-Pacific appeals, and we affirm.

As Sun-Pacific failed to present any evidence, the salient facts are uncontroverted. Mr. Girardot and two additional homeowners testified at trial that during their first meeting with Sunn, he provided them with a price list and a plat for the subdivision. "TENNIS COURT" and "LOT FOR SWIMMING POOL" were written within the boundary lines of lot 1 on the plat. Although the price list stated a price of $35,000 for lot 1, it also indicated that "lot 1 . . . will not be built." Girardot testified that when he asked Sunn why a price was listed for lot 1, Sunn stated that the price reflected the value of the

---

[1] At trial, defense counsel represented to the court that Joseph Sunn, Sun-Pacific's agent, declined to appear because he had a prior conviction in federal district court.

lot and was intended to be used as a marketing tool. Sunn told Girardot that lot 1 would be transferred to the homeowners' association, which would be responsible for constructing the amenities.

According to Girardot, Sunn stated that the lot would be conveyed to the homeowners for two primary reasons: to provide a swim dock for the community, and to act as a buffer from a busy road that dead-ends into a federal campground. Sunn explained that Sun-Pacific had obtained a permit for a community swim dock for lot 1 because not all the lots in the subdivision would qualify for a dock permit. Girardot also testified that Sunn stated that it would be difficult to build a residence on lot 1 because it contained a large retention pond, and because it was too narrow to support a driveway accessible from the subdivision.

At their next meeting, Girardot testified, Sunn confirmed that Sun-Pacific had obtained a dock permit for lot 1 and that such dock access provided a "big incentive" to prospective purchasers in the subdivision. During the third meeting, Girardot expressed his interest in purchasing lots 2 and 3 based on the privacy lot 1 would provide. The two men walked the lots together, and Sunn pointed out the "ideal location" for Girardot's house: on lot 2, less than 20 feet away from lot 1. Girardot testified that Sunn again "assured" him lot 1 would not be built upon and that his home would have "this buffer of all the trees here."

Satisfied with these assurances, Girardot negotiated a price of $59,000 for the two lots.[2] On August 5, 1996, the parties executed a sales contract that contained the following merger clause: "This contract constitutes the sole and entire agreement between parties hereto and no modification of this contract shall be binding unless attached hereto and signed by all parties to this agreement. No representation, promise, or inducement not included in this contract shall be binding upon any party hereto." Lot 1 was not mentioned in the contract, nor at the closing, which took place in September 1996.

Pursuant to a special stipulation in the parties' contract, Sunn cleared the trees from Girardot's home site approximately five weeks after closing. At that time, the parties discussed the fact that the retention pond on lot 1 extended onto a portion of Girardot's property. Girardot testified that the pond was approximately 100 feet wide and 15 to 20 feet deep. Sunn informed Girardot that he would be "required" to fill in the entire pond, as leveling only the portion on his lots would cause excessive drainage problems for the "community" lot. Girardot utilized dirt excavated from his property and an additional 35-40 dump truck loads, filled in the entire pond, and graded

---

[2] The lots had been listed for a total price of $90,000.

the site. This project took Girardot three to four days to complete.

In November 1997, when Girardot's home was nearly finished, Sunn cleared 100 to 150 trees from lot 1. When Girardot reminded Sunn of his promise, he said it was "too bad." Girardot then contacted Sun-Pacific's president in Canada and was informed that the company had changed its mind about dedicating lot 1 to the community. Sunn threatened to destroy the remaining trees unless Girardot paid Sun-Pacific $35,000 for lot 1. Girardot refused and filed a complaint against Sunn and Sun-Pacific, asserting three counts: injunctive relief, fraud, and breach of the agreement to refrain from developing lot 1. Girardot asserted a promissory estoppel theory, claiming that Sun-Pacific was estopped from developing lot 1 in breach of its promise.

The trial court granted summary judgment to Sunn on all counts and to Sun-Pacific on the fraud claim. The case proceeded to trial on the remaining claims, and the court framed the issues as whether Sun-Pacific and Sunn expressly or impliedly restricted the uses of lot 1, and whether they were bound by their written or oral representations.[3]

The jury found that Sun-Pacific should be ordered to keep its promise to appellees not to convey lot 1 to any entity other than the homeowners' association, not to build on lot 1, and not to clear any timber from lot 1. The jury also awarded appellees $16,000 for the purpose of restoring lot 1 to its original condition. Judgment for $16,000 and a permanent injunction were entered. The trial court granted appellees $19,711.13 in attorney fees.

1. Sun-Pacific enumerates as error the denial of its motions for a directed verdict and j.n.o.v. on the Girardots' promissory estoppel claim. We find no error.

For the Girardots to prevail, they were required to show that (1) Sun-Pacific made certain promises; (2) Sun-Pacific should have expected the Girardots to rely on those promises; (3) the Girardots did in fact rely on those promises to their detriment; and (4) injustice could be avoided only by enforcement of the promises.[4]

---

[3] The court based its theory of the case on *Knotts Landing Corp. v. Lathem,* 256 Ga. 321 (348 SE2d 651) (1986), in which the Supreme Court held that a subdivision developer's oral promises to restrict a tract of land to residential use could be enforced under a promissory estoppel theory.

[4] *Doll v. Grand Union Co.,* 925 F2d 1363 (11th Cir. 1991); *Insilco Corp. v. First Nat. Bank,* 248 Ga. 322 (1) (283 SE2d 262) (1981); *Canterbury Forest Assn. v. Collins,* 243 Ga. App. 425 (532 SE2d 736) (2000); *Ambrose v. Sheppard,* 241 Ga. App. 835, 836 (528 SE2d 282) (2000). The claim is codified at OCGA § 13-3-44 (a): "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires."

Since promissory estoppel is an equitable doctrine, the third element is one of reasonable reliance.[5] Sun-Pacific argues on appeal, as it did in its motion for j.n.o.v., that the merger clause in the parties' contract precluded the Girardots from establishing reasonable reliance on Sunn's pre-contractual promises as a matter of law.[6] However, the record reveals that Sun-Pacific did not move for a directed verdict on this ground.[7] The only grounds asserted in Sun-Pacific's motion for a directed verdict were that Sunn's promises were unenforceable under the statute of frauds and that the evidence failed to show estoppel by representation.[8]

"A motion for a directed verdict shall state the specific grounds therefor." OCGA § 9-11-50 (a). "By the great weight of authority, one appealing the denial of a motion for directed verdict may not raise for the first time on appeal a ground not specifically raised in the original motion."[9]

> OCGA § 9-11-50 (b) allows the device of a motion for judgment notwithstanding the verdict to be used when a motion for directed verdict does not end a trial and it proceeds to verdict. It is narrow, however, and does not permit reopening the case for new legal issues which are thought of retrospectively, with hindsight. It provides . . . a post-verdict opportunity for a determination of the legal questions raised by the motion (for a directed verdict). If upon reflection the trial judge determines that the motion for directed verdict was valid, the judge is to set aside the verdict and the original judgment and enter a new judgment in accordance with the motion for directed verdict. It is patent, then, that the j.n.o.v. must be based on grounds raised in the motion for directed verdict initially, for it is in effect only a new ruling on a renewed motion.[10]

"Grounds asserted in a motion for j.n.o.v. but not in the motion for

---

[5] *Ambrose v. Sheppard*, supra, 241 Ga. App. at 836.

[6] See, e.g., *Estate of Farkas v. Clark*, 238 Ga. App. 115, 118 (1) (517 SE2d 826) (1999) (a merger clause "estop[s] a party bound by the terms of the contract from arguing that he or she relied on representations other than those contained in the contract").

[7] The only instance in which Sun-Pacific asserted that the promises did not survive the closing was in colloquy with the court during the cross-examination of Girardot, who was the first of three witnesses.

[8] See *Lowry v. Norris Lake Shores Dev. Corp.*, 231 Ga. 547, 549 (203 SE2d 169) (1974).

[9] (Punctuation and footnote omitted.) *Magnus Homes v. DeRosa*, 248 Ga. App. 31, 33 (2) (545 SE2d 166) (2001).

[10] (Punctuation omitted.) *Dee v. Sweet*, 218 Ga. App. 18, 21 (2) (b) (460 SE2d 110) (1995), citing *Famiglietti v. Brevard Med. Investors*, 197 Ga. App. 164, 166-167 (2) (397 SE2d 720) (1990).

directed verdict are not considered on appeal either."[11] Accordingly, we do not address this issue on appeal.

Even if we were to consider Sun-Pacific's contentions that Sunn's promises did not survive the closing, Sun-Pacific still would not prevail. In denying Sun-Pacific's motion for j.n.o.v., the court found that Sunn's promises did not merge into the contract because Sunn continued to make the same representations after the closing. The uncontroverted evidence demonstrates that several weeks after the closing, Sunn requested that Girardot fill in the retention pond on lot 1 for the benefit of the community. This evidence that Sun-Pacific's agent made representations subsequent to the execution of the agreement on which the Girardots relied to their detriment distinguishes the instant case from the authorities cited by Sun-Pacific.[12] Moreover, *Gerdes v. Russell Rowe Communications*,[13] in which we rejected a promissory estoppel claim based on post-contractual promises, is distinguishable. There, we held that an employee could not reasonably rely upon his employer's alleged post-contractual oral promises to pay him a commission that exceeded the percentage specified in his written agreement. In the instant case, Sunn's promise not to develop lot 1 did not contradict any term in the Girardots' contract.[14] Accordingly, *Gerdes* is inapplicable.

2. We now address the grounds raised by Sun-Pacific in its motion for a directed verdict. First, Sun-Pacific contended that Sunn's promises were unenforceable under the statute of frauds.[15] However, the Supreme Court has rejected the argument that the statute of frauds bars a promissory estoppel claim.

> It is readily apparent that the claim based on promissory estoppel is closely related to a fraud claim, and it is argued by defendant that the requirement of an enforceable promise should be deemed to be as applicable to the promissory estoppel claim as it is to a fraud claim. Nonetheless, defendant acknowledges the decision in *20/20 Vision Center v.*

---

[11] *Famiglietti*, supra.

[12] See *First Data POS v. Willis*, 273 Ga. 792 (546 SE2d 781) (2001) ("in an arm's length business transaction, pre-contractual representations are superceded by a valid contractual merger clause, and cannot form the basis of post-contractual claims of theft by deception, fraud, or misrepresentation"); *W. R. Grace & Co. v. Taco Tico Acquisition Corp.*, 216 Ga. App. 423, 426 (1) (454 SE2d 789) (1995) (denial of a motion for a directed verdict on a promissory estoppel claim based on representations in pre-contractual negotiations reversed).

[13] 232 Ga. App. 534 (502 SE2d 352) (1998).

[14] We have also held that oral promises that do not vary the terms of the parties' written contract may be enforceable as a collateral agreement and thus not defeated by a merger clause. See, e.g., *Brannen/Goddard Co. v. Collin Equities*, 227 Ga. App. 352, 354 (489 SE2d 106) (1997).

[15] OCGA § 13-5-30 (4), (5).

*Hudgens,* 256 Ga. 129 (345 SE2d 330) [(1986)] which clearly states a contrary holding, that is, that where a purported contract was not enforceable, such did not preclude a claim predicated on a theory of promissory estoppel. This Supreme Court decision is indistinguishable and binding precedent on this point.[16]

In *20/20 Vision Center v. Hudgens,*[17] the Supreme Court held that promissory estoppel allows enforcement of a promise that would otherwise be unenforceable under the statute of frauds. As the Eleventh Circuit has commented: "Promissory estoppel is an equitable doctrine designed to prevent the intricacies and details of the law from frustrating the ends of justice."[18] It follows that the trial court properly denied Sun-Pacific's motions for a directed verdict and j.n.o.v. on this ground.

Sun-Pacific next contended that Sunn's promises were unenforceable because they related to future events, citing *Lowry v. Norris Lake Shores Dev. Corp.*[19] *Lowry,* however, is distinguishable. In that case, homeowners contended that the developer of the subdivision in which they resided had orally promised to furnish them water at a permanently fixed price of $10 per quarter. Evidence showed that the fixed-price policy was discontinued because residents abused it. We held that the evidence "[fell] short of creating an equitable estoppel or any contractual obligation on the part of the appellee to furnish water to appellants for any specific period of time at a designated rate."[20] We therefore affirmed the grant of summary judgment to the developer. Here, in contrast, a jury determined that the developer's agent made promises which the developer should be obligated to honor. "Under OCGA § 9-11-50 (b), a j.n.o.v. can properly be granted only when the evidence *demands* a verdict contrary to that returned by the jury. Only if *no* evidence supports the jury's verdict is a grant of j.n.o.v. proper."[21] As evidence supports the jury's verdict, the trial court did not err in refusing to grant a directed verdict on this basis.

Finally, Sun-Pacific contends that the trial court erred in relying on *Knotts Landing.*[22] We disagree. In *Knotts Landing,* a subdivision

---

[16] *Kamat v. Allatoona Fed. Sav. Bank,* 231 Ga. App. 259, 263 (3) (498 SE2d 152) (1998) (grant of summary judgment to bank/lender on promissory estoppel claim reversed).

[17] Supra, 256 Ga. at 135 (7).

[18] *Doll v. Grand Union Co.,* supra, 925 F2d at 1373.

[19] Supra, 231 Ga. at 549.

[20] Id.

[21] (Emphasis in original.) *Mark Six Realty Assoc. v. Drake,* 219 Ga. App. 57, 58 (1) (463 SE2d 917) (1995).

[22] Supra, 256 Ga. 321.

developer had orally promised to restrict an adjacent, vacant tract of land to single-family residential use. When the developer had the tract zoned for commercial use, the residents sought an injunction. The Supreme Court ruled that evidence that the developer's promises induced the plaintiffs to purchase property in the subdivision created an issue of fact on their promissory estoppel claim.

The Court also reiterated the test for implying restrictions upon the use of land:

> Parties may . . . take actions from which courts will imply an agreement to restrict the uses allowed upon a tract of land. The party wishing to enforce a non-express agreement must, of course, establish the area covered by the agreement and the specific content of the restrictions alleged. This is usually accomplished by showing a common grantor's general scheme or plan for developing the property in question.[23]

In *Knotts Landing*, the plat restricting the property to residential use was held insufficient to imply an agreement because the plat was never shown to any prospective purchaser or otherwise used in marketing the lots.[24] In the instant case, the uncontroverted evidence established that Sunn showed prospective purchasers a plat map and price list for the specific purpose of inducing them to purchase property. Accordingly, the trial court correctly relied on *Knotts Landing* in denying Sun-Pacific's motion for a directed verdict.

Sun-Pacific attempts to distinguish *Knotts Landing* because that decision did not address the effect of a merger clause on a promissory estoppel claim. However, in its motion for directed verdict, Sun-Pacific contended that the instant case involved conveyance of title to land rather than restrictions implied upon the use of land. No other reason was offered for distinguishing *Knotts Landing*. In any event, no such distinction exists. Here, Sun-Pacific was not ordered to convey the property to any entity; rather, it was enjoined from transferring title to any entity other than a homeowners' association.

3. Sun-Pacific finally asserts that the trial court abused its discretion in granting the Girardots' motion for attorney fees pursuant to OCGA § 9-15-14 (b). We disagree.

The statute permits the court to award attorney fees if it finds

---

[23] Id. at 323 (2). The test is not new. It has been previously held that "restrictions under a general plan adopted by the owner to sell lots may in equity be imposed on the land beyond the express restrictions contained in the deed to the purchaser, on the theory of implied covenants. . . ." (Citation and punctuation omitted.) *Jones v. Lanier Dev. Co.*, 190 Ga. 887, 889 (3) (11 SE2d 11) (1940).

[24] Supra, 256 Ga. at 323 (2) (c).

"that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct."[25] Sun-Pacific argues that it was justified in defending the action because of the dearth of authority concerning the effect of a merger clause on a promissory estoppel claim. However, Sun-Pacific ignores the fact that it initially disputed the promises made to the Girardots, demanded a jury trial, and then failed to produce a witness to contradict the plaintiffs' testimony. Based on these facts, we cannot say that the court abused its discretion in assessing attorney fees against Sun-Pacific.[26]

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED AUGUST 7, 2001.

*Schreeder, Wheeler & Flint, David H. Flint, Nathan M. Wheat, Timothy C. Batten*, for appellant.
*Mark A. Baker*, for appellees.

---

[25] OCGA § 9-15-14 (b).
[26] See, e.g., *Hipple v. Simpson Paper Co.,* 234 Ga. App. 516, 518-519 (5) (507 SE2d 156) (1998).
[1] Bryant had 13 prior felony convictions.