## 77078. TRUST COMPANY BANK OF AUGUSTA v. CHRISTMAS et al.
### (375 SE2d 644)

CARLEY, Judge.

Financing for appellee-plaintiffs' purchase of a van was obtained from appellant-defendant Trust Company Bank of Augusta (Bank). Appellees made only one payment to the Bank and then returned the van to the dealer, having decided that they could not afford to make the remaining payments. On May 5, 1986, appellee Mrs. Christmas telephoned the Bank's Collections Manager to discuss the situation and to determine how a future deficiency, if any, would be satisfied. During the course of that telephone conversation, the Bank's Collections Manager allegedly entered into an "agreement" concerning the repayment of any future deficiency. According to appellee Mrs. Christmas, the "agreement" was that the Bank would notify appellees of any sale of the van and that, after such sale, the parties would then reach an agreement as to the payment of any remaining deficiency.

Subsequent to appellee Mrs. Christmas' conversation with the Bank's Collections Manager, appellees did receive notice by certified mail that the van would be sold at a private sale, unless appellees demanded a public sale within ten days of the notice or they redeemed the vehicle prior to such sale. Appellees did not respond to this pre-sale notice. Accordingly, the van was sold at a private sale and, after the proceeds were applied to the indebtedness, a deficiency remained. The Bank did not provide appellees with any *post-sale* notification. Instead, acting pursuant to agreements which had been signed by appellees upon their opening of checking and savings accounts, the Bank applied the funds in those accounts towards a reduction of the indebtedness. As a result of these debits made by the Bank, checks which appellees had drawn were dishonored due to insufficient funds in the accounts.

Appellees filed this suit for damages, alleging conversion of assets, intentional infliction of emotional distress upon Mrs. Christmas, and fraud and misrepresentation based upon the "agreement" of May 5, 1986. Appellant moved for summary judgment as to each count of appellees' complaint. The trial court granted summary judgment in favor of the Bank only as to the conversion claim and the claim for intentional infliction of emotional distress. Although the trial court denied the Bank's motion for summary judgment as to the fraud count, it did certify for immediate review its ruling in that regard and this court granted the Bank's application for an interlocutory appeal.

Appellant enumerates as error the trial court's denial of its motion for summary judgment on appellees' fraud claim. " 'In order to give rise to an action for damages, the defendant's fraud must be actual, i.e., the misrepresentation must be made either knowingly or

with reckless disregard for the consequences.' [Cit.]" *Stanford v. Otto Niederer & Sons*, 178 Ga. App. 56, 58 (2) (341 SE2d 892) (1986). Accordingly, the legal issue that is presented for resolution is whether a genuine issue of material fact remains as to the Bank's liability for *actual* fraud.

A review of the record would indicate that discovery has eliminated the very existence of any misrepresentation on the part of the Bank as a genuine issue of material fact in the case. A reading of the deposition of appellee Mrs. Christmas shows that, in her conversation with the Bank employee, she apparently simply *misunderstood* the legal procedure which the Bank intended to pursue in connection with the repossession of the van and also misconstrued the manner in which the Bank would seek to satisfy any future deficiency. It would appear that appellee Mrs. Christmas, *mistakenly assumed* that the acknowledged agreement of the Bank's Collections Manager to provide "notice of the sale" of the van referred to post-sale notice rather than to the statutorily required pre-sale notice. Likewise, appellee Mrs. Christmas mistakenly assumed that the "agreement" of the Bank's Collections Manager that appellees "could . . . make small installment payments on any deficiency balance" represented a firm commitment that the Bank would definitely elect to so proceed in lieu of exercising any of its existing contractual rights as a secured party. A representation that the Bank would provide "notice of the sale" was entirely truthful, but appellee Mrs. Christmas merely mistakenly assumed that, in addition to the requisite pre-sale notice, appellees would be receiving some form of notification after the sale. Likewise, a statement made by the Bank's Collections Manager as to what appellees, as defaulting debtors, "could" do in satisfaction of any future deficiency is neither a misrepresentation as to what the Bank, as the secured party, would do to satisfy a possible deficiency, nor a firm commitment by the Bank that the amount of any such future "deficiency" would not reflect the Bank's prior exercise of its contractual right of set-off against appellees' accounts. The law provides relief to a plaintiff who is defrauded by a defendant's actionable misrepresentations. It does not provide relief to a plaintiff who mistakenly construes a defendant's otherwise truthful statements and representations.

However, even assuming that the evidence of record would authorize a finding that the Bank had misrepresented that appellees would be sent post-sale as well as pre-sale notice and that the Bank would waive its contractual right to a set-off against appellees' accounts if a deficiency resulted, the grant of summary judgment in favor of the Bank was nevertheless demanded. Such alleged misrepresentations would constitute no more than the Bank's present agreement to come to a future agreement with appellees as to the specifics

of how their defaulted loan was to be repaid. "Although fraud can be predicated on a misrepresentation as to a future event where the defendant knows that the future event will not take place ([cits.]), fraud cannot be predicated on a promise which is unenforceable at the time it is made. [Cits.] A promise to make [or to renegotiate the terms of] a loan with no specification of the interest rate or maturity date is not enforceable and will not support an action for fraud. [Cits.]" *Beasley v. Ponder*, 143 Ga. App. 810 (240 SE2d 111) (1977). See also *First Nat. Bank & Trust Co. v. Thompson*, 240 Ga. 494 (241 SE2d 253) (1978); *Sierra Assoc. v. Continental Ill. Nat. Bank &c. Co.*, 169 Ga. App. 784, 790 (3) (315 SE2d 250) (1984). The Bank's alleged "agreement" that it would not pursue its then-existing remedies, but would provide appellees post-sale notification and arrange a new loan repayment plan for the deficiency " 'constitutes nothing more than an unenforceable, broken promise, unsupported by consideration. Consequently, [appellees'] claim of fraud based on this alleged promise must fail.' [Cit.] Thus, [even] assuming [the Bank] made the statement[s] as [appellee] Mrs. [Christmas] claims, [appellees] clearly would not be able to maintain an action for fraud. Summary judgment was authorized." *Clark v. Gen. Motors Acceptance Corp.*, 185 Ga. App. 130, 136 (7b) (363 SE2d 813) (1987). See also *Johnson v. Hinson*, 188 Ga. 639 (2) (4 SE2d 561) (1939); *Llop v. Nat. Bank of Ga.*, 154 Ga. App. 504 (268 SE2d 777) (1980).

It is undisputed that appellees failed to make installment payments toward the indebtedness evidenced by the note in favor of the Bank and that such failure constituted a default under the terms of the note. It is also undisputed that, in its repossession and sale of the van and in its subsequent set-off against appellees' accounts, the Bank was in the lawful exercise of its contractual rights as a secured party. Appellees should not be allowed to place themselves in a more favorable position than any other defaulting party simply because they have alleged the breach of an oral "agreement" on the part of the Bank which was totally unenforceable at the time allegedly made. "[W]e do not find the necessary elements of certainty . . . , mutuality . . . , or consideration . . . which constitute a valid agreement. . . . [Cit.] The promise[s] . . . were mere naked ones, unenforceable in any court of law. [Cits.]" *Turpin* v. *North American Acceptance Corp.*, 119 Ga. App. 212, 214-215 (1) (166 SE2d 588) (1969). "The mere breach of a valid, enforceable contract does not amount to fraud. [Cit.] A fortiori failure to observe an agreement by which one is not bound and which is unenforceable cannot amount to fraud. 'It is contrary to common sense to rely upon a promise that is not legally binding upon the person making it.' [Cit.]" *Turpin v. North American Acceptance Corp.*, supra at 215-216 (1). Appellees' obtained a loan and, having defaulted thereon, they were not defrauded even if,

contrary to the Bank's alleged "agreement," they were subjected to the remedies which the Bank was lawfully entitled to pursue against a defaulting debtor. As the result of their "reliance" upon the Bank's alleged misrepresentations, appellees were treated exactly as any other defaulting debtor. Accordingly, the trial court erred in denying the Bank's motion for summary judgment.

*Judgment reversed. Sognier, J., concurs. Deen, P. J., concurs specially.*

DEEN, Presiding Judge, concurring specially.

Although I concur in the logic of the closely reasoned analysis set forth in the instant case, I feel constrained to comment on the harshness of the result when, as here, the letter of the law is applied in instances where the parties have such disparate bargaining positions.

It is clear from the record in the instant case that the bank's collections manager understood that Mrs. Christmas was asking that she be given *post-sale* notice as to the amount of any deficiency, so that a payment schedule could be worked out and repayments begun. Moreover, according to the record, it was—or should have been—clear to the bank officials involved that the Christmases were *not*, as the majority characterizes them, like "any other defaulting debtor," in a very significant respect. The Christmases were not seeking to dodge or to walk away from their obligations under the promissory note. To the contrary, on their own initiative, when they realized that they had made an error of judgment in purchasing the van and that they would be unable financially to honor the terms of the note, they returned the almost-new van to the dealer and approached the bank to inquire how they might pay off their debt in full, including any deficiency that might exist after the van had been sold. Their actions were "upfront" and above-board.

It is true that, technically and legally, they (like "any other" depositor or borrower) had notice of the bank's rights in the event of default; but, like so many others, and particularly those of limited education or business experience, they regarded as just so much unavoidable "fine print" the language of notice appearing on the signature cards and/or other documents they signed when opening accounts or transacting other business with the bank. Moreover, it is doubtful that the language itself, much less its import, was brought to their attention when they affixed their signatures, since the law presumes that one reads what one signs.

In the instant case one can fault appellees' procedures, but cannot contend that their intentions were otherwise than above reproach; to end up, as they did, seriously in debt and with their credit record in shreds, seems disproportionate to their error. Although the bank almost certainly was not guilty of fraud, actual or constructive, and

although this is certainly neither the first nor the last instance of a bank's pursuing a similar course in a similar situation, one wishes that some sort of equitable intervention were possible when an institution and the proverbial "little man" (or woman) undertake to deal "at arm's length" and the latter, through mistake, misguidance, or misunderstanding, comes out with little left but his bare arm.

DECIDED NOVEMBER 9, 1988 —
REHEARING DENIED NOVEMBER 22, 1988.

*Hull, Towill, Norman & Barrett, Patrick J. Rice, George R. Hall,* for appellant.
*Victor C. Hawk,* for appellees.