A97A2115. KAMAT et al. v. ALLATOONA FEDERAL SAVINGS BANK.
(498 SE2d 152)

McMURRAY, Presiding Judge.

Plaintiffs Manohar P. Kamat and Evelyn M. Kamat filed this action for damages predicated on the refusal of defendant Allatoona Federal Savings Bank to make a loan to them to fund a real estate purchase. As amended, plaintiffs' complaint relies upon theories of breach of contract, fraud and deceit, and promissory estoppel. Plaintiffs appeal the grant of summary judgment in favor of defendant on all issues.

On motion for summary judgment, the parties opposing the motion are to be given the benefit of all reasonable doubts and all

favorable inferences that may be drawn from the evidence. *Torrington Co. v. Hill*, 219 Ga. App. 453 (465 SE2d 447). Viewed in this light, the evidence of record shows that plaintiffs saw a newspaper ad and became interested in buying a condominium at auction. They contacted the seller who provided a package of information concerning the auction procedures, the financing available through defendant, and a blank copy of the proposed agreement of sale to be entered into upon successfully bidding for a condominium unit.

The sellers told plaintiffs to contact Joan M. Donaghue (now McClelland), a senior loan officer employed by defendant, to be preapproved for a loan to finance the purchase of a condominium unit. Plaintiffs did not previously know of and had never done business with either McClelland or defendant.

An appointment was arranged for December 11, 1991, and on that date plaintiffs met with McClelland at defendant's offices. At that meeting plaintiffs told McClelland of their intent to bid upon a condominium unit at Midtown Square at an auction to be conducted on December 14, 1991. The proposed contract with the sellers of the condominiums was all cash at closing and would not be subject to plaintiffs' ability to obtain a loan. It was essential to plaintiffs to be approved for a loan prior to bidding. Plaintiffs made McClelland aware of their concerns and requested that their loan application be approved prior to the auction.

Plaintiffs applied for a 30-year term, 95 percent Federal Housing Administration (FHA) insured adjustable rate mortgage, with an initial rate no greater than 6.5 percent. McClelland filled out a loan application in the plaintiffs' presence. Plaintiffs were provided with a copy of a rate quote agreement.

There are a number of conditions to obtaining a 95 percent FHA insured mortgage in a development such as Midtown Square. The conditions include the provision of a complete set of plans and specifications, and a ten-year United States Department of Housing & Urban Development (HUD) approved warranty provided by the builder or seller.

At the December 11, 1991 meeting with McClelland, plaintiffs also received a document entitled "Items Required For Loan Processing," which was a checklist on which McClelland checked off a number of items and documents that were necessary to obtain loan approval. Item No. 31 on the checklist is "three complete sets of plans and specs." Item 31 was not checked by McClelland to indicate that the item was necessary for loan approval. The checklist also contained three item numbers which were blank where additional requirements could have been written in but these were left blank. The checklist did not note the requirement of a home warranty.

On December 12, 1991, plaintiffs attended a seminar concerning

the impending condominium auction conducted by the seller. At the seminar, plaintiffs received further information including a "bidder's packet" consisting of documents concerning the condominium and the auction procedures.

On December 13, 1991, plaintiffs telephoned McClelland and were advised that their loan application was approved. On December 14, 1991, plaintiffs attended the auction. McClelland was present at the auction and told plaintiffs to "feel free to bid, everything is okay."

Plaintiffs bid on a condominium unit and were the successful bidders. Following the auction, plaintiffs signed a contract agreeing to purchase the condominium unit on which their bid had prevailed. The contract did not contain any financing contingency.

On December 16, 1991, plaintiffs met with McClelland and delivered documents necessary to continue processing the paperwork for closing the loan, paid $257 for an appraisal and credit report, signed the loan application McClelland had filled out at their prior meeting, and received a "Registration Form" setting forth the loan amount and the interest rate for an FHA insured adjustable mortgage.

Subsequently, defendant declined to provide the 95 percent FHA mortgage sought by plaintiffs due to an inability to obtain copies of the plans and specifications, and a seller provided ten-year HUD approved warranty which were required by the FHA. Plaintiffs rejected alternative financing due to its higher cost and forfeited their earnest money to sellers.

McClelland had obtained approval for 95 percent FHA insured financing on purchases of condominium units of Midtown Square from HUD on October 16, 1990. Subsequently she obtained financing for a number of purchasers of Midtown Square units and the seller provided plans and specifications as well as the required warranties for purchasers who qualified for FHA 95 percent financing.

In November 1991, the seller's managing partner contacted McClelland and told her that he was planning to conduct an auction of the remaining units. McClelland told him that the project was eligible for 95 percent financing, subject to the conditions required by HUD, but never discussed the specific requirements of plans and specifications and a ten-year warranty with him. A number of potential purchasers were referred to McClelland prior to the auction. McClelland attended the auction and while there discussed the need for plans and specifications with the seller's construction supervisor.

When McClelland reviewed the file on plaintiffs' loan application on December 28, 1991, she noted that defendant had not received the required plans and specifications or the HUD approved warranty required by FHA. McClelland attempted to obtain the plans and specifications herself but was unable to obtain a complete set.

When McClelland received a copy of plaintiffs' contract for the

purchase of the condominium she noted that it was an "as is" sale. The seller refused to provide a homebuyer's warranty to plaintiffs. *Held*:

1. The first enumeration of error complains of the state court's grant of summary judgment to defendant on plaintiffs' breach of contract claim. The state court concluded that this issue was governed by OCGA § 13-5-30 (7) which states that an agreement to lend money must be in writing and by evidence that despite McClelland's assurances no loan commitment had been finalized in writing.

Plaintiffs attempt to satisfy the requirement of a written loan commitment by reference to two documents. First, plaintiffs refer to a letter to them from McClelland dated April 20, 1992, which states that they were "approved" prior to the auction on December 14, 1991. Yet, this letter which explains the defendant's reasons for being unable to provide plaintiffs with 95 percent FHA financing cannot be viewed as a loan commitment and the reference to an earlier loan approval is, in the context of the other evidence at record, at most, a reference to McClelland's oral commitment.

The other document relied upon by plaintiffs is a good faith estimate of closing costs which is a portion of the "Registration Form" received by plaintiffs on December 16, 1991. This document does contain the terms of the proposed loan but does not contain any written commitment by defendant to make such a loan and thus does not satisfy the requirement imposed by OCGA § 13-5-30 (7).

The state court cited *Bridges v. Reliance Trust Co.*, 205 Ga. App. 400 (422 SE2d 277), apparently for its application of OCGA § 13-5-30 (7) in Division 2 of that opinion. Plaintiffs maintain that the state court's reliance was misplaced and that *Bridges* should be distinguished on the facts. However, this argument is based on the factual predicate for an alternative basis for the holding in *Bridges*. The fact underlying the primary basis for this Court's holding in Division 2 of *Bridges* is not distinguishable.

2. The grant of summary judgment to defendant on plaintiffs' claim for fraud and deceit was not error. As recited in the state court order, " '[a]lthough fraud can be predicated on a misrepresentation as to a future event where the defendant knows that the future event will not take place (cits.), fraud cannot be predicated on a promise which is unenforceable at the time it is made (cits.).' *Bridges* [*v. Reliance Trust Co.*, 205 Ga. App. 400, supra], and *Beasley v. Ponder*, 143 Ga. App. 810 [(240 SE2d 111)]; *Trust Company Bank of Augusta v. Christmas*, 189 Ga. App. 372 [(375 SE2d 644)]; *Studdard v. George D. Warthen Bank*, 207 Ga. App. 80 [(427 SE2d 58)]." The alleged oral promise to provide a mortgage to plaintiffs was unenforceable at the time it was purportedly made because it was not in writing as required by OCGA § 13-5-30 (7). "Obviously, one cannot sue in fraud

based upon the alleged breach of an oral contract which would itself be unenforceable under the Statute of Frauds. See *Royal v. Bland Properties*, 175 Ga. App. 250, 251 (2) (333 SE2d 145)." *Studdard v. George D. Warthen Bank*, 207 Ga. App. 80, 81 (2), supra. See also *Adamson v. Maddox*, 111 Ga. App. 533, 535-536 (3) (142 SE2d 313).

Nonetheless, plaintiffs maintain that their fraud claim is not predicated on a promise to make a loan at some time in the future, rather that "the fraud occurred by reason of [defendant] Allatoona not disclosing to the [plaintiffs] the conditions under which loan approval was made." This position is logically flawed since it must implicitly assume the existence of some promise by defendant to make a mortgage loan to plaintiffs and any damage to plaintiffs flows ultimately from the plaintiffs' failure to obtain the loan they sought. Plaintiffs fail in their attempt to avoid the impact of the above authority.

3. The state court erred in granting summary judgment in favor of defendant on plaintiffs' remaining claim which is based on a theory of promissory estoppel. In Georgia, the doctrine of promissory estoppel has been adopted by statute, OCGA § 13-3-44. To prevail on a promissory estoppel claim, plaintiffs must show that (1) defendant made certain promises, (2) defendant should have expected that plaintiffs would rely on such promises, (3) the plaintiffs did in fact rely on such promises to their detriment, and (4) injustice can be avoided only by enforcement of the promise. *Doll v. Grand Union Co.*, 925 F2d 1363 (11th Cir.); *Insilco Corp. v. First Nat. Bank*, 248 Ga. 322 (1) (283 SE2d 262).

It is readily apparent that the claim based on promissory estoppel is closely related to a fraud claim, and it is argued by defendant that the requirement of an enforceable promise should be deemed to be as applicable to the promissory estoppel claim as it is to a fraud claim. Nonetheless, defendant acknowledges the decision in *20/20 Vision Center v. Hudgens*, 256 Ga. 129 (345 SE2d 330) which clearly states a contrary holding, that is, that where a purported contract was not enforceable, such did not preclude a claim predicated on a theory of promissory estoppel. This Supreme Court decision is indistinguishable and binding precedent on this point.

Defendant also argues that plaintiffs received what they sought, an FHA loan commitment which was by definition conditional in that certain requirements were specified by the FHA and it was only plaintiffs' failure to comply with the FHA conditions which prevented them from obtaining the loan they sought. Promissory estoppel does not transform a conditional promise into an unconditional promise. *Protective Life Ins. Co. v. Robinson*, 193 Ga. App. 316, 318 (1) (387 SE2d 603). However, there is evidence which goes beyond simple approval of the FHA loan application. A jury could reasonably find a

promise of broader dimensions based on the statements of McClelland assuring plaintiffs that everything was okay for them to bid, and this is particularly so in the light of McClelland's failure to accurately inform plaintiffs of the FHA requirements.

Finally, defendant maintains that plaintiffs engaged in wilful conduct that creates a bar to their promissory estoppel claim in that they executed a written loan application which certified that they intended to use the condominium as a primary residence when such was not true. However, in examining the viability of a promissory estoppel claim we look to the time at which plaintiffs acted in reliance on defendant's promise. In the case sub judice, this would be when plaintiffs bid on the condominium and entered into a contract for the purchase of the condominium, all of which occurred prior to plaintiffs' signing of the loan application form.

*Judgment reversed. Beasley and Smith, JJ., concur.*

DECIDED MARCH 17, 1998.

*Zachary & Segraves, Rick S. Sexton*, for appellants.
*Nisbet S. Kendrick III*, for appellee.