A01A0322, A01A0323. SKB INDUSTRIES, INC. v. INSITE; and vice versa.
(551 SE2d 380)

ANDREWS, Presiding Judge.

The appeal and cross-appeal in this case are from jury verdicts rendered in a dispute between a contractor and a subcontractor over work on a construction project placed for bid. The contractor, Insite, a division of Nu-Stone Surfacing, Inc., sued its subcontractor, SKB Industries, Inc., on the basis of promissory estoppel claiming the bid SKB submitted to Insite was incorporated into Insite's winning bid on the project, and that Insite was damaged when SKB failed to do a substantial part of the work it promised to do in its bid. The jury found for Insite on this claim and awarded $711,573.42 in damages. The jury also found for Insite on its claims that SKB tortiously interfered with Insite's contractual relationship with the project's general contractor, causing $82,561.29 in damages, and that Insite was enti-

tled to $50,000 in litigation expenses pursuant to OCGA § 13-6-11. SKB counterclaimed against Insite for breach of contract claiming Insite failed to pay it for the portion of the work it completed on the project. The jury awarded SKB $47,150 on the counterclaim along with litigation expenses pursuant to OCGA § 13-6-11 in the amount of $1.

In Case No. A01A0322, SKB appeals from the verdicts for Insite and from the award in its favor for $1 in litigation expenses, claiming the amount of expenses awarded was inadequate. We find there was evidence supporting the verdict for Insite on the basis of promissory estoppel, but no evidence to support the verdict for Insite on the tortious interference claim. Although the evidence supported the jury's award of litigation expenses for Insite, we reverse and remand this award to allow Insite to prove the amount of expenses attributable solely to the claim on which it prevailed. There was also evidence supporting the jury's award of litigation expenses for SKB in the amount of $1. Despite evidence that SKB paid expenses in excess of the award, the jury was authorized to conclude that the reasonableness and value of those expenses were less than the sums paid. In Insite's cross-appeal in Case No. A01A0323 from the verdicts for SKB, we find there was evidence supporting the verdict awarding SKB $47,150 for breach of contract and awarding $1 for expenses of litigation.

### Case No. A01A0322

1. SKB contends the trial court erred by allowing Insite to pursue its claim based on promissory estoppel.

This claim was based on evidence that Beers Construction Company, a general contractor, was accepting bids for work to build the Georgia International Plaza in preparation for the 1996 Summer Olympic Games in Atlanta. The project comprised two elements: building large structural concrete planting containers across the top of an existing parking deck (hardscaping), and placing soil, plants, and drainage features in the containers to create a landscaped plaza on top of the deck (landscaping). Insite, a hardscaping contractor, was preparing to submit a bid to Beers to do both the hardscaping and landscaping work on the project. For the purpose of submitting a bid for the whole project, Insite received a bid from SKB, a landscaping subcontractor, to do the landscaping portion of the work for $1,085,222.50. Insite included SKB's bid in its bid to Beers to do the whole project for $3,161,411.

Insite's bid was significantly lower than the next lowest bid on the project, and Beers suspected that the landscaping portion of the bid from SKB may not have been based on materials specified by the

contract documents for the project. When this concern was brought to SKB's attention, SKB confirmed to Beers and Insite that it had received all the documents containing the project specifications and that its bid to Insite was based on all the required materials. However, SKB subsequently informed Insite that its bid was not based on the required materials, but rather included lower priced materials not approved in the project specifications. Subsequently, SKB sent Insite a revised bid to do the landscaping work with the required materials for a higher price. Ultimately, a change in the project specifications was negotiated by Beers to allow SKB to use materials less expensive than those originally required, and SKB assured Insite that it would do the landscaping work using these materials. After SKB made these assurances, Beers accepted Insite's bid, and Insite became contractually obligated to perform the hardscaping and landscaping work on the project for the amount of its bid to Beers.

Insite sent SKB a written subcontract showing a new price for the landscaping portion of the work in the amount of $1,112,222.50 based on the use of the newly approved materials. After receiving the subcontract, SKB sent Insite a notice to contract and requested an initial payment for work making reference to the subcontract amount of $1,112,222.50. However, SKB never signed the subcontract and ultimately refused to do a substantial portion of the landscaping work included in its bid. Because of SKB's refusal to perform all the work included in its bid and the time constraints of the project, Insite was forced to perform landscaping work in which it had no expertise, and which cost it substantially more to do than the price for this work included in SKB's bid. Although SKB refused to fully perform the work in its bid, it later entered into a written subcontract with Insite to perform a small portion of the work included in its bid. SKB claimed it refused to perform because of disputes over language in the first subcontract sent to it by Insite, but there was also evidence from which the jury could have concluded that, after SKB assured Insite it would do the bid work, SKB refused to perform because it realized it had mistakenly bid too low on portions of the landscape work.

Even though there was no binding contract between Insite and SKB for the portion of the landscape work at issue, there was evidence supporting Insite's promissory estoppel claim for the difference between the cost it incurred in performing the landscape work SKB refused to do and the price for this work submitted by SKB in its bid, as revised for the new materials. Insite's promissory estoppel claim required proof that: (1) SKB made a promise to do the landscape work in the bid it submitted to Insite; (2) SKB should have expected that Insite would rely on the promise; (3) Insite did rely on the promise to its detriment; and (4) injustice can be avoided only by enforce-

ment of the promise. OCGA § 13-3-44 (a); *DPLM, Ltd. v. J. H. Harvey Co.*, 241 Ga. App. 219, 220-221 (526 SE2d 409) (1999). SKB clearly expected Insite to rely on its bid because it was submitted to Insite for the express purpose of allowing Insite to include it in the bid made by Insite to Beers for the whole project. It was also foreseeable to SKB that Insite would suffer damage if SKB refused to perform the bid work after Insite relied on SKB's bid as a basis for Insite's bid to Beers. There was no evidence that SKB's bid was intended to be revocable at any time before acceptance. Under these circumstances, Insite's reliance on SKB's bid provided consideration sufficient under the principle of promissory estoppel to imply an enforceable promise by SKB to keep its bid offer to Insite open for a reasonable period of time to allow Insite to accept the bid after Beers awarded Insite the project. *Loy's Office Supplies v. Steelcase, Inc.*, 174 Ga. App. 701, 702 (331 SE2d 75) (1985); see *Drennan v. Star Paving Co.*, 51 Cal.2d 409 (333 P2d 757) (1958). After Insite was awarded the project, it promptly notified SKB that its bid was accepted and tendered SKB the landscape work at the bid price as revised by the parties.

We find no merit in SKB's contention that the written subcontract it subsequently entered into with Insite to perform a portion of the landscape work represented the entire agreement between the parties for all the landscape work and rendered promissory estoppel inapplicable. Certainly, if Insite and SKB had reached a subsequent agreement covering all the landscaping work in the bid, then Insite could not claim it detrimentally relied on SKB's bid, and promissory estoppel would not apply. *Atlanta Nat. Real Estate Trust v. Tally*, 243 Ga. 247, 249 (253 SE2d 692) (1979); *W. R. Grace & Co. v. Taco Tico Acquisition Corp.*, 216 Ga. App. 423, 426 (454 SE2d 789) (1995). However, the subcontract expressly states that the landscaping work which SKB refused to perform was excluded from the subcontract. We decline to accept SKB's contention that the work expressly excluded should be deemed included because the subcontract contains a clause excluding it. Even if there was some ambiguity in the subcontract as to whether Insite intended to release SKB from its bid, evidence admissible under the parol evidence rule which explained the ambiguity was presented showing that Insite and SKB had no such intention. *Presidential Financial Corp. v. Francis A. Bonanno, Inc.*, 244 Ga. App. 430, 435 (535 SE2d 809) (2000).

SKB further contends that admission of evidence in support of Insite's promissory estoppel claim violated the statute of frauds by enforcing a promise that created, in effect, an oral contract for the landscaping work that could not be performed within one year under the terms of the project. See OCGA § 13-5-30 (5) (agreements not to be performed within one year must be in writing). Assuming, without deciding, that the statute of frauds is applicable, its basic purpose is

to prevent fraud. It does not operate to prevent use of the equitable principle of promissory estoppel to enforce a promise which was expected to and did induce detrimental reliance. *20/20 Vision Center v. Hudgens*, 256 Ga. 129, 135 (345 SE2d 330) (1986); *Kamat v. Allatoona Fed. Sav. Bank*, 231 Ga. App. 259, 263 (498 SE2d 152) (1998).

2. We agree, however, with SKB's contention that there was no evidence to support the jury's award of damages against it for tortious interference with Insite's contractual relationship with Beers.

The evidence showed that Insite refused to pay SKB for the portion of the landscaping work it completed pursuant to the written subcontract, and SKB filed a suit against Beers and its bonding company seeking payment for this work in the amount of $392,150 under Beers's payment bond on the project. It is undisputed that SKB was within its rights in filing suit on the payment bond. Nevertheless, when Beers settled the suit by making a $345,000 payment to SKB, Insite claimed the direct payment to SKB by Beers violated its contract with Beers and that SKB tortiously interfered with the contract by inducing the payment. We note that the $47,150 difference between the amount sued for on the bond and the settlement paid to SKB was the sum awarded by the jury to SKB in its breach of contract counterclaim against Insite.

Even assuming the tortious interference claim was viable because SKB could be considered a stranger to both the contract between Insite and Beers and the business relationship giving rise to it (compare *Atlanta Market Center Mgmt. Co. v. McLane*, 269 Ga. 604, 609 (503 SE2d 278) (1998)), there was no evidence to support a finding that SKB intentionally induced Beers to breach its contractual relationship with Insite. Id. at 608. The evidence cited by Insite showed only that SKB sued on the payment bond, discussed settlement of the suit with Beers, and received payment from Beers. The award of $82,561.29 for tortious interference must be reversed.

3. Contrary to SKB's contention, we find there was sufficient evidence of bad faith by SKB to create a jury issue as to the award of litigation expenses under OCGA § 13-6-11. There was evidence from which the jury could conclude that, after SKB realized it had mistakenly bid too low on parts of the bid submitted to Insite, it acted in bad faith by refusing to cooperate with Insite to perform the work after Beers awarded the project to Insite. *Williamson v. Harvey Smith, Inc.*, 246 Ga. App. 745, 750-751 (542 SE2d 151) (2000).

Nevertheless, Insite was entitled only to expenses of litigation attributable solely to the promissory estoppel claim on which it prevailed. *Southern Cellular Telecom v. Banks*, 209 Ga. App. 401, 402 (433 SE2d 606) (1993). The jury rendered verdicts in favor of SKB on three other claims by Insite, and the award on Insite's tortious inter-

ference claim is reversed by this decision. Because the award was made in a lump sum and Insite did not prove the amount of litigation expenses attributable solely to the promissory estoppel claim, we reverse the award of those expenses and remand the case to the trial court for an evidentiary hearing to allow Insite to establish the amount of expenses attributable solely to the claim on which it prevailed. *United Cos. Lending Corp. v. Peacock*, 267 Ga. 145, 147 (475 SE2d 601) (1996).

4. Because the $47,150 awarded to SKB on its breach of contract counterclaim against Insite was not a liquidated sum certain, we find no error in the trial court's refusal to award pre-judgment interest to SKB on this amount. This award was for the difference between the amount claimed due by SKB on its written subcontract with Insite, and the payment SKB received from Beers to settle SKB's suit to collect on the subcontract against the payment bond. Disputes between Insite and SKB based on set-off and back charges due under the subcontract rendered the amount of these damages unliquidated and, therefore, not subject to pre-judgment interest. *PDA, Inc. v. Haas Corp.*, 185 Ga. App. 785, 787 (366 SE2d 169) (1988).

5. SKB contends it was entitled to a new trial on its claim for expenses of litigation under OCGA § 13-6-11 because the jury awarded it $1 on this claim, but there was undisputed evidence that it paid attorney fees in excess of the award. Regardless of the amount paid, the reasonableness and value of the expenses of litigation and attorney fees under OCGA § 13-6-11 were for the jury to determine. *American Med. Transport Group v. Glo-An, Inc.*, 235 Ga. App. 464, 466 (509 SE2d 738) (1998); *Patterson & Co. v. Peterson*, 15 Ga. App. 680, 684 (84 SE 163) (1914).

## Case No. A01A0323

6. Insite contends the $711,573.42 in damages awarded on its promissory estoppel claim was inadequate and inconsistent with uncontradicted evidence that it sustained losses of $958,740.69. Included in the $958,740.69 figure was $82,561.29 of interest calculated by Insite on sums paid by Beers to SKB as a result of the payment bond suit (which was the amount awarded on Insite's tortious interference claim), and $164,605.98 in pre-judgment interest calculated by Insite on the total cost incurred by it to perform bid work SKB refused to do. The jury deducted these interest items and awarded damages totaling $711,573.42. Contrary to Insite's contention, the jury did not ignore undisputed evidence, but refused to award the interest sought by Insite. The verdict was not inadequate or the result of gross mistake or bias, and no new trial on damages is warranted. OCGA § 13-6-4; *Morris v. Savannah Valley Realty*, 233

Ga. App. 762, 765 (505 SE2d 259) (1998).

7. We find no error in the award of $47,150 in damages on SKB's breach of contract counterclaim. The jury resolved conflicting testimony as to the amount owed on the written subcontract by awarding SKB the difference between the $392,150 it sought on this claim under the Beers payment bond, and the $345,000 payment made directly to SKB by Beers.

*Judgment affirmed in Case No. A01A0323. Judgment affirmed in part, reversed in part and remanded with directions in Case No. A01A0322. Eldridge and Miller, JJ., concur.*

DECIDED JUNE 25, 2001 —
RECONSIDERATION DENIED JULY 16, 2001 — 

*Schreeder, Wheeler & Flint, David H. Flint, Lynn C. Stewart, Timothy C. Batten, Mark W. Forsling*, for appellant.

*Morris, Manning & Martin, Bruce C. Smith, William J. Sheppard*, for appellee.