A94A1904. W. R. GRACE & CO.-CONN. et al. v. TACO TICO
ACQUISITION CORPORATION et al.
(454 SE2d 789)

BIRDSONG, Presiding Judge.

W. R. Grace & Co.-Conn. ("Grace") and Del Taco Restaurants,

Inc. (collectively "Del Taco"), appeal a judgment, based upon a jury verdict, in favor of Taco Tico Acquisition Corporation, Taco Tico, Inc., George W. Baker, Sr., and R. Gene Smith (collectively "Taco Tico").

The parties operated fast-food Mexican restaurants, Del Taco primarily in the Southeastern United States and Taco Tico primarily in the Midwest and Western United States. In 1990, Taco Tico initiated negotiations directed toward the acquisition of Del Taco. In early and mid-1990's, Taco Tico made various unsuccessful proposals, with differing funding concepts, to acquire the shares of Del Taco owned by Grace and all the publicly held shares of the corporation until finally, in August 1990, the parties executed a non-binding letter of intent that set forth the terms proposed for Taco Tico's acquisition of Del Taco. In significant part, the letter provided that Taco Tico would lease Del Taco's properties for 15 years for $3.5 million annually with an option to purchase at the end of the lease, that Grace would acquire the publicly held shares of Del Taco, and that Taco Tico would pay Grace with a $5.4 million promissory note. Additionally, as collateral for Taco Tico's lease and note payments, Grace would receive a security interest in Taco Tico's properties and warrants to purchase a controlling interest in the new company that would exist after the acquisition. The letter also provided that the agreement would remain contingent on the right of the parties to conduct further investigation of the financial condition of the other. The letter stated that the agreement was in principle only and that neither party would be obligated to complete the transaction until a final agreement was executed by the parties. More significantly, the letter stated: "Notwithstanding the foregoing . . . or any other past, present or future written or oral indications of assent or indications of results of negotiation or agreement to some or all matters then under negotiation, it is agreed that no party to the proposed transaction (and no person or entity related to any such party) will be under any legal obligation with respect to the proposed transaction or any similar transaction, and no offer, commitment, estoppel, undertaking or obligation of any nature whatsoever shall be implied in fact, law or equity, unless and until a formal agreement providing for the transaction containing in detailed legal form terms, conditions, representations and warranties (secured by an appropriate escrow) has been executed and delivered by all parties intended to be bound. This paragraph sets forth the entire understanding and agreement of the parties (and all related persons and entities) with regard to the subject matter of this paragraph and supersedes all prior and contemporaneous agreements, arrangements and understandings related thereto. This paragraph may be amended, modified, superseded or cancelled only by a written instrument which specifically states that it

amends this paragraph, executed by an authorized officer of each entity to be bound thereby."

On the same date the parties executed a management services agreement through which Taco Tico agreed to manage the operations of Del Taco and Taco Tico while the parties attempted to complete the acquisition. This agreement provided that Taco Tico would be paid only $10 per month for these management services. Thereafter, Taco Tico began managing Del Taco and Taco Tico.

Changes in economic conditions, however, apparently necessitated alterations in Taco Tico's operations and general financial conditions. As a result, Taco Tico did not attempt to complete the transaction in accordance with the letter of intent, but, instead made proposals concerning Del Taco's continued operation which differed from the terms provided in the letter of intent. Ultimately, Taco Tico was advised that the proposed acquisition would not take place, and the management agreement was terminated.

Subsequently, Taco Tico sued Del Taco asserting claims for fraud and rescission of the agreement, breach of fiduciary duty, violation of the Georgia Securities Act, promissory estoppel (because of representations that the acquisition would be completed), and quantum meruit for services rendered in managing Del Taco. After the trial court granted summary judgment to Del Taco on the claims for breach of fiduciary duty and violation of the Georgia Securities Act, the case proceeded to trial on the remaining claims. Ultimately, the jury found in favor of Del Taco on the claims for fraud and rescission, but awarded damages to Taco Tico on its claims of promissory estoppel and quantum meruit. The jury also found for Taco Tico on Del Taco's counterclaim.

Del Taco contends the trial court erred by denying its motion for a directed verdict on the promissory estoppel claim because the language of the agreement between the parties specifically disclaimed reliance on future representations by either party concerning their intention to consummate the proposed deal. Del Taco further contends the jury's award of damages for quantum meruit cannot be reconciled with the jury's verdict on the fraud and rescission claims and the explicit contractual provision limiting Taco Tico's management fee to $10 a month. Taco Tico has not appealed the verdict which was adverse to its interests or the earlier grant of summary judgment. *Held*:

In reviewing the trial court's denial of Del Taco's motion for a directed verdict, this court reviews and resolves the evidence and any doubt or ambiguity in favor of the verdict, and a directed verdict is not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom *demands* a certain verdict. *Southern Store &c. Equip. Co. v. Maddox*, 195 Ga. App. 2, 3 (392 SE2d 268).

1. Del Taco's motion for a directed verdict on Taco Tico's claim for promissory estoppel was based upon Taco Tico's inability to show, as a matter of law, that it reasonably relied on any representations by Del Taco that the acquisition would be completed because the letter of intent disclaimed any reliance on such representations. Under the doctrine of promissory estoppel a "promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." OCGA § 13-3-44 (a). See *Nickell v. IAG Fed. Credit Union*, 213 Ga. App. 516, 519 (445 SE2d 335). Thus, if Taco Tico could not reasonably rely on any representations made by Del Taco, promissory estoppel would not apply. *Fidelity &c. Co. of Maryland v. West Point Constr. Co.*, 178 Ga. App. 578, 580 (344 SE2d 268).

Because the letter of intent signed by Taco Tico specifically states that neither party may rely on any representations made by the other party regarding whether the transaction would be consummated, we find that, as a matter of law, Taco Tico could not rely reasonably upon any alleged representations by Del Taco. See *Guernsey Petroleum Corp. v. Data Gen. Corp.*, 183 Ga. App. 790 (359 SE2d 920). This court has consistently held that disclaimers in contracts prevent justifiable reliance on other representations purportedly made by the parties. See, e.g., *Copeland v. Home Savings of America*, 209 Ga. App. 173 (433 SE2d 327); we perceive no difference between reasonable reliance in promissory estoppel cases and justifiable reliance in other cases sufficient to warrant a different result. Therefore, the evidence presented demanded a verdict for Del Taco on these claims, and the trial court erred by denying Del Taco's motion for a directed verdict. As the cases cited by Taco Tico do not concern disclaimers that applied to both future and past promises, they are not persuasive.

In this appeal, both parties to the negotiations were experienced, successful businessmen who were advised by capable attorneys. Therefore, it cannot be reasonably maintained that they did not comprehend the terms of the letter of intent that they signed or that they did not understand the possibility that the transaction would not be completed. Under these circumstances, Taco Tico cannot avoid the responsibility for its actions taken in preparation for the acquisition of Del Taco based on the assumption that the transaction would be completed. Moreover, the record shows that Taco Tico did not attempt to consummate the transaction based on the terms outlined in the letter of intent.

2. Because of the jury verdict for Del Taco on the claims for fraud and rescission, Taco Tico is bound by the express terms of the

contract establishing the payment for the management services provided to Del Taco. Accordingly, we find that the trial court also erred by denying Del Taco's motion for a directed verdict on Taco Tico's claim for quantum meruit because the services for which quantum meruit were claimed were provided under an express contract. *Life Care Ambulance v. Hosp. Auth. of Gwinnett County,* 202 Ga. App. 864, 867 (415 SE2d 502). Under our law, "there can be no recovery in quantum meruit where an express contract governs all the claimed rights and responsibilities of the parties." *Lord Jeff Knitting Co. v. Lacy,* 195 Ga. App. 287, 288 (393 SE2d 55).

The denial of appellants' motions for directed verdict must be reversed and the case remanded to the trial court with direction to enter a directed verdict for appellants on these claims.

*Judgment reversed with direction. Blackburn and Ruffin, JJ., concur.*

DECIDED FEBRUARY 3, 1995 —
RECONSIDERATION DENIED FEBRUARY 28, 1995 — ▮▮▮▮▮▮

*Paul, Hastings, Janofsky & Walker, John G. Parker, Ronald T. Coleman, Jr., Melinda L. Moseley,* for appellants.

*Alston & Bird, Peter M. Degnan, Mary C. Gill, Cynthia L. Counts,* for appellees.