### A00A0345. PRESIDENTIAL FINANCIAL CORPORATION v. FRANCIS A. BONANNO, INC.
#### (535 SE2d 809)

RUFFIN, Judge.

Presidential Financial Corporation appeals from the trial court's grant of summary judgment in favor of Francis A. Bonanno, Inc. on Presidential's promissory estoppel claim. Because genuine issues of material fact preclude summary judgment, we reverse.

Presidential extends loans to businesses and uses their accounts receivable as collateral. In 1995, Presidential entered into a business relationship with Moccia Brothers, Inc., a distributor of alcoholic beverages. Presidential extended a revolving line of credit to Moccia Brothers, which executed certain loan agreements in favor of Presidential secured by the company's assets, including its accounts receivable. In March 1996, Moccia Brothers defaulted on the loans, and Presidential filed suit against Moccia Brothers. Moccia Brothers eventually repaid the loans, and Presidential dismissed the lawsuit.

Shortly after Presidential filed the suit, Moccia Brothers informed Presidential that it had become the sole American importer for Villa Massari, an Italian distiller. Moccia Brothers also told Presidential that it had assigned to Bonanno, an Ohio-based liquor distributor, the exclusive right to distribute Villa Massari products in the United States. According to Moccia Brothers, Bonanno could obtain Villa Massari products only through Moccia Brothers. Because Bonanno sought generous payment terms which Moccia Brothers could not afford to extend, Moccia Brothers again turned to Presidential for credit. After performing a background check, Presidential determined that Bonanno was creditworthy. Presidential states that it agreed to extend further credit to Moccia Brothers, but only if Bonanno would agree to be unconditionally and directly liable to Presidential for the products it ordered from Moccia Brothers.

In July 1996, Bonanno ordered $48,625 worth of Villa Massari products from Moccia Brothers pursuant to Invoice No. 330. Moccia

Brothers used the order as collateral to draw funds on its line of credit from Presidential. Before extending credit, Presidential prepared a letter agreement addressed to Bonanno on Moccia Brothers' letterhead which stated as follows:

> We have entered into an accounts receivable financing agreement with Presidential Financial Corporation where all of our receivables are assigned to Presidential and in that regard have assigned:
>
> Invoice: #330
> Dated: July 21, 1996
> Amount: $48,625
>
> Please be kind enough to acknowledge below that you are *presently liable* for the invoice and that you will pay to [Presidential] *within terms*.
>
> Many thanks for your assistance. Please be kind enough to fax your reply directly to [Presidential's assistant vice president].

(Emphasis supplied.) The letter was signed by the president of Moccia Brothers, and below his signature appeared the following:

> To: Presidential Financial Corporation
>
> This acknowledgment is to state that we will pay directly to you *without offset of any kind*, $48,625 no later than August 25, 1996.

(Emphasis supplied.) Below this paragraph was a blank for Bonanno's signature. Moccia Brothers forwarded the letter to Bonanno, which signed it and returned it directly to Presidential. Upon receipt of the agreement, Presidential loaned $36,468.75 to Moccia. According to Presidential's assistant vice president, Presidential never would have approved this loan if Bonanno had not executed and returned the acknowledgment letter. In accordance with the letter, Bonanno paid Presidential the sum of $48,625 on or before August 25, 1996.

Bonanno placed three more orders with Moccia Brothers. Each time, Bonanno executed an acknowledgment letter identical to the first one, except that the invoice number, amount, date, and repayment date were different. Bonanno faxed each acknowledgment letter directly to Presidential. Bonanno paid the invoice on the second order to Presidential without incident. Disputes arose, however, as to

the third and fourth orders.

With respect to the third order, dated August 27, 1996, Bonanno ordered $59,251 worth of products from Moccia Brothers pursuant to Invoice No. 370. Bonanno signed a letter with the same language quoted above, agreeing to pay Presidential the sum of $59,251. Presidential, in turn, extended credit to Moccia Brothers. Bonanno paid Presidential only $49,169.33, however, claiming that it had deducted from the bill certain marketing expenses that Moccia Brothers owed it.

With respect to the fourth order, dated November 1, 1996, Bonanno ordered $59,000 worth of products from Moccia Brothers pursuant to Invoice No. 390. Once again, Bonanno signed a letter with the same language quoted above, agreeing to pay Presidential the sum of $59,000. And again, Presidential loaned money to Moccia Brothers. Bonanno never received the merchandise it ordered, however,[1] and it refused to pay Presidential anything on Invoice No. 390. Moccia Brothers has failed to repay Presidential for the loan advanced pursuant to Invoice No. 390, as well as other sums.

Presidential filed suit against Bonanno for amounts allegedly owed under Invoice Nos. 370 and 390, asserting claims for breach of contract and promissory estoppel. Presidential claims that the express language of the third and fourth letter agreements unconditionally obligated Bonanno to pay Presidential the sums of $59,251 and $59,000, respectively, and prohibited Bonanno from offsetting those payments in any way. Bonanno denies that it owes Presidential any money. As to Invoice No. 370, Bonanno claims that Moccia Brothers agreed to share marketing expenses for the Villa Massari products, and that Bonanno was entitled to deduct Moccia Brothers' portion from its payment to Presidential. With respect to Invoice No. 390, Bonanno maintains that, under its contract with Moccia Brothers, it was obligated to pay only for goods it received and accepted. In essence, Bonanno asserts that Presidential, as Moccia Brothers' assignee, is bound by the terms of the Bonanno/Moccia Brothers' contract.

Bonanno filed a motion for summary judgment. In its interrogatory responses, Presidential admitted that there was no consideration for its letter agreements with Bonanno. Based on this admission, the trial court granted summary judgment to Bonanno on Presidential's contract claim, and Presidential does not appeal that ruling. As to Presidential's promissory estoppel claim, the trial court denied

---

[1] Moccia Brothers' president avers that the company purchased the products from Villa Massari and made them available for Bonanno to pick up. Bonanno's president, on the other hand, avers that "Moccia never shipped, and Bonanno never received or accepted the goods referenced in Invoice No. 390."

summary judgment on Presidential's claim for money owed under Invoice No. 370, concluding that the parties' agreement was ambiguous regarding "the sharing of the marketing expenses between Moccia and Bonanno." The trial court granted summary judgment, however, on Presidential's claim for money owed under Invoice No. 390. The court agreed with Bonanno's position that, as Moccia Brothers' assignee on Invoice No. 390, Presidential's claim was subject to any defenses Bonanno would have against Moccia Brothers. "Certainly," wrote the court, "in a dispute between Moccia and Bonanno, Bonanno would be entitled to show that it received no goods and thus was not required to pay for the invoice."

Following the trial court's grant of partial summary judgment, the parties entered into a "Consent Judgment" that broadly stated: "By consent of the parties, judgment is hereby entered in favor of Francis A. Bonanno, Inc. and against Presidential Financial Corporation." According to Presidential, the purpose of the consent judgment was to "facilitate this appeal." On appeal, Presidential challenges only the trial court's grant of partial summary judgment as to Invoice No. 390.

1. At the outset, we consider whether we have jurisdiction to hear this appeal.[2] We are troubled by Presidential taking this appeal from a *consent* judgment. In *Riverdale Pools & Constr. v. Evans*,[3] the trial court granted partial summary judgment against the defendant on the issue of liability, leaving unresolved the amount of damages. The parties later settled the case and entered into a consent judgment for a specified sum. Thereafter, the defendant filed an appeal, challenging the trial court's ruling on liability. We held that

> a party not aggrieved by the judgment of the trial court is without legal right to except thereto, since he has no just cause of complaint. In this appeal, [defendant] cannot be aggrieved by the trial court's judgment *since it was entered with his consent*. Moreover, the enumerations of error concern only the grant of partial summary judgment, and do not challenge the terms, validity, or enforceability of the judgment entered pursuant to the parties' consent agreement.[4]

---

[2] Although neither party raises this issue, "[i]t is not only the right but the duty of a reviewing or appellate court to raise the question of its jurisdiction in all cases in which there may be any doubt as to the existence of such jurisdiction." (Punctuation omitted.) *Atlantic-Canadian Corp. v. Hammer, Siler &c. Assoc.*, 167 Ga. App. 257 (1) (306 SE2d 22) (1983).

[3] 210 Ga. App. 127 (435 SE2d 501) (1993).

[4] (Citations and punctuation omitted; emphasis supplied.) Id. at 127-128.

Because the appeal was moot, we dismissed it.

At first blush, *Riverdale Pools* seems to be controlling here. Presidential did not directly appeal the trial court's partial summary judgment order,[5] but instead filed an appeal after a consent judgment was entered against it. This appeal challenges only the partial summary judgment order, not the consent judgment. Here, however, there is no indication that the parties have settled Presidential's claim as to Invoice No. 390. And, despite the broad wording of the consent judgment, it appears from the record that Presidential intended to consent to judgment only as to its claim on Invoice No. 370 — not as to its claim on Invoice No. 390 — and intended to reserve its right to appeal the trial court's partial summary judgment order. We therefore cannot say that this appeal is moot.

2. Turning to the merits of Presidential's appeal, we begin with the law applicable to promissory estoppel. In order to prevail on this claim, Presidential must show that (1) Bonanno made certain promises; (2) Bonanno should have expected that Presidential would rely on those promises; and (3) Presidential did, in fact, rely on the promises to its detriment.[6] We conclude that genuine issues of material fact exist as to whether Presidential has satisfied these requirements, and that summary judgment was therefore inappropriate.[7]

(a) As to the first requirement, it is clear that the October 29 letter constituted a promise on the part of Bonanno; it is less clear exactly what that promise was. Presidential argues that the plain language of the letter shows that Bonanno promised unconditionally to pay Presidential a sum certain — $59,000 — by February 1, 1997. Bonanno, on the other hand, contends that the letter represents a promise to pay Presidential for the invoice, but only to the extent that it would be liable to Moccia Brothers under the invoice. Thus, Bonanno maintains that Presidential stands in the shoes of Moccia Brothers and is subject to any defenses that Bonanno would have had against a suit for payment by Moccia Brothers. Bonanno asserts the defense of nonreceipt of the goods, which it contends would have been a valid defense under the Bonanno/Moccia Brothers contract. It is undisputed for the purpose of summary judgment that Bonanno never received the goods and that this was a valid defense under

---

[5] See OCGA § 9-11-56 (h); *Olympic Dev. Group v. American Druggists' Ins. Co.*, 175 Ga. App. 425 (1) (333 SE2d 622) (1985) ("The grant of partial summary judgment as to one or more but fewer than all the claims or parties is reviewable by direct appeal if the notice of appeal is filed within 30 days of the rendition of such judgment.").

[6] *Nickell v. IAG Fed. Credit Union*, 213 Ga. App. 516, 519 (4) (445 SE2d 335) (1994).

[7] Summary judgment is appropriate when there is no genuine issue of material fact as to any essential element of the plaintiff's claim and the defendant is entitled to judgment as a matter of law. We review a grant of summary judgment de novo. *Murray v. Fitzgerald Convenient Centers*, 239 Ga. App. 799 (521 SE2d 915) (1999).

Bonanno's agreement with Moccia Brothers. Thus, if Bonanno's interpretation of its promise to Presidential is correct, then Bonanno is entitled to summary judgment.

We start with the language of the fourth letter agreement.[8] By signing and returning the letter, Bonanno agreed to pay $59,000 "directly" to Presidential by February 1, 1997. This appears to be a straightforward promise to pay a sum certain by a specific date. Bonanno, however, points to the language in the agreement asking Bonanno to acknowledge that it will pay the invoice "within terms." Nothing in the letter explains the meaning of this phrase. Bonanno insists that it means within the terms of the Bonanno/Moccia Brothers contract, which requires payment only upon acceptance of the goods. Presidential, on the other hand, maintains that the phrase means only that Bonanno had a 90-day payment term, not that the provisions of the Bonanno/Moccia Brothers contract have been "imported" into the letter agreement.

As further support for its position that Bonanno had no defenses against payment, Presidential points to the clause in which Bonanno agreed to pay "without offset of any kind." Once again, the letter agreement does not explain what this phrase means. Presidential asserts that "[t]he clear meaning of the term 'offset' provides a broad scope of defenses and claims that Bonanno agreed to waive." Bonanno, on the other hand, argues that "offset" means a recoupment, not "affirmative relief" or a "counterclaim."[9] Thus, according to Bonanno, while "there is arguably some dispute regarding Bonanno's ability to 'offset' against Presidential," the phrase does not constitute a waiver of the right to assert defenses.

We find that the phrases "within terms" and "without offset of any kind" are ambiguous.[10] Reading the letter agreement as a whole, we cannot ascertain, from the face of the document, the intention of the parties. Parol evidence is admissible to explain the ambiguities, and as there is a conflict in that evidence, it is up to the jury to decide what the phrases mean.[11] Thus, genuine issues of material fact

---

[8] See OCGA § 13-2-3 ("The cardinal rule of [contract interpretation] is to ascertain the intention of the parties."); *Brown v. Ohio Cas. Ins. Co.*, 239 Ga. App. 251, 254 (2) (519 SE2d 726) (1999) ("We look to the language of the contract to determine the intent of the parties.").

[9] In support of their differing interpretations, the parties cite Black's Law Dictionary and a number of Georgia cases defining "offset" in contexts different from the one present here. These authorities, however, do not help us determine what *the parties* intended for the word to mean.

[10] See *Bell v. Sasser*, 238 Ga. App. 843, 851-852 (2) (520 SE2d 287) (1999) (" 'Ambiguity in a contract may be defined as duplicity, indistinctness, an uncertainty of meaning or expression.' ").

[11] Id. at 852.

remain as to the nature of Bonanno's promise to Presidential.[12]

(b) Assuming that Bonanno made an unconditional promise to pay a sum certain to Presidential, we next consider whether Bonanno did so knowing that Presidential would rely on that promise. Presidential has presented evidence that Bonanno knew that Presidential would loan money to Moccia Brothers only if Bonanno executed the fourth letter agreement. Thus, there is a jury question on the second element of promissory estoppel.

Bonanno argues that any reliance by Presidential was unreasonable as a matter of law.[13] Bonanno suggests that Presidential could not possibly have believed Bonanno would make an unconditional promise to pay, because Bonanno would receive no benefit from doing so. Presidential presents evidence, however, that its financing arrangement with Moccia Brothers enabled Bonanno to obtain the 90-day payment term it sought. Moccia Brothers apparently could not afford to extend a 90-day term without a loan from Presidential, and Moccia Brothers was Bonanno's only source of the Villa Massari products. Thus, Bonanno clearly stood to benefit from Moccia Brothers' arrangement with Presidential.

(c) As to the third element of promissory estoppel, Presidential presented evidence that it detrimentally relied on Bonanno's alleged unconditional promise to pay. According to Presidential's vice president, Presidential would never have loaned money to Moccia Brothers without such a promise from Bonanno. Moreover, Bonanno timely and fully paid the first two invoices assigned to Presidential, and the dispute over the third invoice did not arise until after Bonanno executed the fourth letter agreement and Presidential extended credit to Moccia Brothers.

In light of these factual disputes, the trial court erred in granting summary judgment to Bonanno on Presidential's promissory estoppel claim for money due under Invoice No. 390. We therefore reverse.

---

[12] Bonanno also relies on OCGA § 11-9-318 (1) (a), which provides that

[u]nless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale . . . the rights of an assignee are subject to . . . [a]ll the terms of a contract between the account debtor and assignor and any defense or claim arising therefrom.

But Presidential is not suing as an assignee of the account receivable; it is suing on Bonanno's direct, independent promise to Presidential — whatever that promise is. Thus, OCGA § 11-9-318 does not apply here. And even if it did apply, the question of whether the fourth letter agreement constitutes an enforceable agreement by Bonanno not to assert defenses against Presidential is not amenable to summary resolution, as discussed above.

[13] See *Fidelity &c. Co. v. West Point Constr. Co.*, 178 Ga. App. 578, 580 (344 SE2d 268) (1986) ("Promissory estoppel cannot be applied unless the promisee reasonably relied on the promise.").

*Judgment reversed and remanded. Andrews, P. J., and Ellington, J., concur.*

DECIDED JUNE 12, 2000.

*Sutherland, Asbill & Brennan, Steven L. Polk,* for appellant.
*Griffin, Cochrane & Marshall, Craig A. Courville, Gerald L. Turner,* for appellee.