## A04A1692. TAMPA BAY FINANCIAL, INC. v. NORDEEN et al.
## A04A1693. DELAMONT et al. v. TAMPA BAY FINANCIAL, INC.
(612 SE2d 856)

BARNES, Judge.

Maurice Delamont filed suit against Carl Smith, Sr., Christopher Baker, and Tampa Bay Financial, Inc. ("TBF") for fraud, tortious interference with contract, and guaranty of payments. After Smith,

Baker, and TBF answered, Delamont moved to dismiss, and counterclaimed. Delamont twice amended his complaint, adding a Georgia Racketeer Influenced and Corrupt Organizations Act (RICO) count and claims of promissory estoppel against Smith and TBF and breach of fiduciary duty against Baker. Thereafter Quentin Nordeen and Bobby Boykin were added as plaintiffs by consent order.

Smith, Baker, and TBF[1] moved for summary judgment asserting that Nordeen, Boykin, and Delamont could not have reasonably relied upon any oral statements because of the merger clause. After oral argument, the trial court granted summary judgment to Smith and TBF on Delamont's promissory estoppel claims, but denied summary judgment on Nordeen and Boykin's claims. The remaining claims were litigated in a bench trial, and the court entered judgment in favor of Nordeen for $190,000, in favor of Smith and TBF on Boykin's claims, and in favor of Nordeen, Boykin, and Delamont on Smith and TBF's counterclaim.

In Case No. A04A1692, TBF appeals the trial court's judgment in favor of Nordeen, Boykin, and Delamont on its counterclaim against them. Nordeen, Boykin, and Delamont contend in Case No. A04A1693 that the trial court erred by granting summary judgment in favor of Smith and TBF on Nordeen, Boykin, and Delamont's promissory estoppel claims against them.

Both appeals arise from the same failed business deal. Nordeen, Boykin, and Delamont were once stockholders in Spherus Technologies, Inc. ("STI"). TBF is a venture capital firm specializing in investments involving startup companies, and Smith is a principal in TBF.[2]

In late 1999, TBF and Nordeen, Boykin, and Delamont began negotiations involving exchanging their stock in STI for shares in a publicly traded company to be selected by TBF through a reverse merger. In the process Baker conducted a due diligence investigation of STI for TBF. Even though STI's primary asset was a multiyear, multimillion dollar contract with the Metro Regional Education Service Agency concerning Internet-based learning devices in schools, the MRESAnet Project, it does not appear that Baker questioned anyone about that contract and did not request a copy of the contract. After several false starts, the reverse merger was eventually completed after Nordeen, Boykin, and Delamont signed documents agreeing to exchange their stock in STI for stock of the publicly traded company with which it merged.

---

[1] Baker subsequently settled the claims against him and is not involved in this appeal.

[2] Unless specifically referring to some action taken by him, Smith and Tampa Bay Financial will be referred to collectively as TBF.

Subsequently, however, TBF learned of a consulting contract involving STI and an official connected with the Metro Regional Education Service Agency which threatened STI's contract on the MRESAnet Project. As a result, the planned redemption of Nordeen, Boykin, and Delamont's shares was delayed. After the publicly traded company ultimately went bankrupt, their remaining stock was not redeemed.

*Case No. A04A1692*

1. In this appeal, TBF contends the trial court erred by entering judgment against TBF on its counterclaim because the undisputed evidence shows that Nordeen, Boykin, and Delamont misrepresented or fraudulently concealed the existence of a consulting agreement that, when revealed, resulted in the termination of their company's most valuable contract, and the trial court's finding of fact that the consulting agreement was not a material fact was not supported by the evidence.

Under OCGA § 9-11-52 (a) findings of trial courts in nonjury trials "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Because the clearly erroneous test is in effect the same standard as the any evidence rule, appellate courts will not disturb fact findings of a trial court if there is any evidence to sustain them, *Kimbrell v. Effingham Bd. of Tax Assessors*, 191 Ga. App. 544, 545-546 (382 SE2d 388) (1989), and conflicting evidence in the record satisfies the "any evidence" test. *Bowman v. Palmour*, 209 Ga. App. 270 (433 SE2d 380) (1993). Further, questions concerning the credibility of witnesses and the preponderance of the evidence are for the trier of facts to decide. *Kimbrell v. Effingham Bd. of Tax Assessors*, supra, 191 Ga. App. at 546.

Even though Smith testified that TBF would not have completed the transaction if it had known of the consulting contract, we find evidence to support the trial court's finding that the consulting agreement was not material. This evidence shows that Baker, who conducted the due diligence for TBF, had unrestricted access to STI's records, he did not ask for specific documents, he did not recall asking Boykin for any information, and may or may not have asked Nordeen for documents. Baker did not discover information about the consulting agreement. TBF points to no evidence showing that Nordeen, Boykin, and Delamont concealed the information about the contract. Further, the evidence shows that even after TBF learned of the consulting contract, it agreed to purchase Nordeen and Boykin's shares. Consequently, TBF's contention that Nordeen, Boykin, and Delamont concealed the consulting agreement is not supported by the

record. Moreover, the evidence showing that TBF continued to re- deem Nordeen and Boykin's shares after it was aware of the consult- ing contract is sufficient to support the trial court's finding that the consulting contract was not material to TBF's decision to proceed with the merger.

Therefore, TBF's enumeration of error in this appeal is without merit.

### Case No. A04A1693

2. In this appeal the only error enumerated by Nordeen, Boykin, and Delamont is that the trial court erred by granting summary judgment to TBF on their claims based on promissory estoppel. The court's order, however, granted summary judgment to TBF only on Delamont's claim of promissory estoppel and denied TBF's motion as to Nordeen and Boykin, and their claims based on promises made by Smith after they signed the agreements were tried on the merits. Although ultimately finding against Nordeen and Boykin because their promissory estoppel claims were barred by the merger clauses, the trial court awarded Nordeen $190,000 for a post-signing promise to redeem his stock. Neither Nordeen, Boykin, nor Delamont has appealed the trial court's final judgment, and thus no issues concern- ing that judgment are properly before us. Matters not enumerated as error will not be considered on appeal. *Rider v. State*, 226 Ga. 14, 15 (2) (172 SE2d 318) (1970). Consequently, as Nordeen and Boykin were not affected by the court's grant of summary judgment to TBF on Delamont's promissory estoppel claims, they have no grounds to appeal it. *Presidential Financial Corp. v. Francis A. Bonanno, Inc.*, 244 Ga. App. 430, 433 (1) (535 SE2d 809) (2000).

We find no error in the grant of summary judgment to TBF on Delamont's claims that he would not have signed the agreement if Smith and TBF had not guaranteed the redemption of their shares of stock.

As to Delamont's arguments to the contrary,

> [u]nder the doctrine of promissory estoppel a "promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." OCGA § 13-3-44 (a). Thus, if [Delamont] could not reason- ably rely on any representations made by [TBF], promissory estoppel would not apply.

(Citation omitted.) *W. R. Grace & Co.-Conn. v. Taco Tico Acquisition*

*Corp.*, 216 Ga. App. 423, 426 (1) (454 SE2d 789) (1995). The trial court rejected Delamont's promissory estoppel claim because it found that he could not, as a matter of law, rely upon any promises made by Smith and Baker before the agreement was signed that were contrary to the terms of the agreement. See *Borden v. Pope Jeep-Eagle*, 200 Ga. App. 176, 178-179 (2) (407 SE2d 128) (1991). "Where a conflict exists between oral and written representations, it has long been the law in Georgia that if the parties have reduced their agreement to writing, all oral representations made antecedent to execution of the written contract are merged into and extinguished by the contract and are not binding upon the parties. [Cit.]" *First Data POS v. Willis*, 273 Ga. 792, 794 (2) (546 SE2d 781) (2001). Thus, any promises made before the signing of the agreement "cannot be used to vary the terms of a valid written agreement purporting to contain the entire agreement of the parties, nor would the violation of any such alleged oral agreement amount to actionable fraud." *Campbell v. C & S Nat. Bank*, 202 Ga. App. 639, 640 (1) (415 SE2d 193) (1992).

The agreement, signed December 23, 1999, states, in relevant part:

> a. The offering of assets was made only through direct, personal contact between the undersigned and a representative of the Company;
>
> . . .
>
> f. The Shareholder[3] has had an opportunity to ask questions of, and receive answers to those questions, from officers and employees of the [Company], concerning the terms and conditions of the offering and the proposed business of the [Company], and that all questions have been answered to the Shareholder's full satisfaction;
>
> g. The Shareholder has been advised that an investment in the Company will involve a high degree of risk and that there are no assurances that, if accepted as an investor, [Shareholder] will recover the full investment or receive any return on the investment at any time; . . .
>
> . . .

---

[3] Delamont was a shareholder.

l. The Shareholder has relied solely on information provided and the answers with respect thereto furnished to the Shareholder or the Shareholder's representatives by the [Company], and further, the Shareholder hereby warrants that no representations or warranties have been made to the Shareholder by the [Company] as to the tax consequences of this investment, or as to any profits, losses, or cash flow which may be received or sustained as a result of this investment, and that the Shareholder's decision to invest in the stock has been based solely upon the information provided and by the information requested by the Shareholder in writing, and no oral statement by the [Company], or their agents and employees; and

m. The Shareholder has knowledge and experience in financial and business matters and is capable of evaluating the merits and risks of an investment in the stock, and is able to bear the economic risks of the purchase. Furthermore the Shareholder has had the opportunity to consult with his own attorney, accountant, and/or representative regarding the investment in the stock.

Smith signed the agreement as "agent for the company." According to the appellant's brief, the representations Delamont relies upon "which form the basis of the equitable estoppel claims in this case, were made in December of 1999." Under this merger clause and Delamont's admission that the representations were made before he signed the agreement containing the merger clause, the trial court did not err by granting summary judgment on his promissory estoppel claim. The representations Delamont relies upon are directly contradicted by the merger clause, and, accordingly, cannot provide a basis for his claim of promissory estoppel. *W. R. Grace & Co.-Conn. v. Taco Tico Acquisition Corp.*, supra, 216 Ga. App. at 426 (1).

Although Delamont claims that the merger clause cannot apply to Smith and TBF because they were not parties to the underlying agreement, the trial court found that they "were the [Company], or their agents and employees agents of the company" and thus fell within the agreement's terms. The court also found that "the merger clause clearly includes any representations made by Smith and Baker regarding this transaction" because the "only parties [Delamont] had any dealings with related to this merger were Smith and Baker," and "the merger clause would be meaningless if it did not cover representations made by [them]." Moreover, because the presigning promises Delamont relies upon contradict the terms of the agreements, they were not collateral to the agreement containing the

merger clause. We also find no support for Delamont's contentions in *Sun-Pacific Enterprises v. Girardot*, 251 Ga. App. 101 (553 SE2d 638) (2001), because this court did not consider Sun-Pacific's enumerations regarding promissory estoppel, which were not preserved in the trial court. Id. at 105. Similarly, we find Delamont's reliance on *Presidential Financial Corp. v. Francis A. Bonanno, Inc.*, supra, 244 Ga. App. at 436, to be misplaced because the case turned on factual disputes.

We also find that Delamont is not entitled to rely upon TBF's failure to respond to the correspondence from Nordeen as a waiver of the merger clause because this evidence was presented during the trial on the merits and not earlier when the court considered TBF's motion for summary judgment. In any event, we do not find that this correspondence would have required a different result.

The thrust of the authorities Delamont relies upon concerns whether TBF's failure to respond to their correspondence had the effect of admitting that the promises they relied upon were made. See OCGA §§ 24-4-23 (the business letter presumption) and 24-3-36 (acquiescence or silence when a response is required). Whether the promises were made, however, is simply not significant because, even if made, the promises themselves were contradicted by the merger clause and could not be reasonably relied upon. The trial court's ruling was not based on the failure of proof that the promises were made, but on the theory that the merger clause prevented Delamont from justifiably relying on any promises made. Accordingly, he could not establish an essential element of his cause of action. "If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All other disputes of fact are rendered immaterial." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

As Delamont cannot establish a case for promissory estoppel without proving that he justifiably relied upon the promises, he cannot prevail on this claim, and the trial court did not err by granting summary judgment to TBF.

Accordingly, the grant of summary judgment in Case No. A04A1693 is affirmed.

*Judgments affirmed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED MARCH 29, 2005.

*Morris, Manning & Martin, William J. Sheppard,* for Tampa Bay Financial, Inc.

*Edward F. Danowitz,* for Nordeen and Delamont et al.