A07A2166. LIFESTYLE HOME RENTALS, LLC v. RAHMAN.
(660 SE2d 409)

MILLER, Judge.

Lifestyle Home Rentals, LLC ("LHR") initiated this action against Nassareen Rahman seeking a writ of dispossession and a monetary judgment for rent owed under an alleged lease-purchase agreement between the parties. Rahman counterclaimed for breach of contract, asserting that the parties had entered into a purchase and sale agreement and that LHR had failed to perform under the same. She also sought a return of the $40,000 down payment that she made under the terms of that agreement. Following a bench trial, the trial court granted LHR a writ of possession but awarded Rahman a refund of her down payment, less an amount owed for rent. LHR appeals, alleging that the trial court erred (i) in concluding that the parties' contract was a purchase and sale agreement, rather than a lease-purchase agreement; and (ii) in refusing to award it the amount of the down payment as liquidated damages. Discerning no error, we affirm.

While we apply a de novo standard of review to any questions of law decided by the trial court (see *Coker v. Coker*, 265 Ga. App. 720, 721 (595 SE2d 556) (2004)), "factual findings made after a bench trial shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. OCGA § 9-11-52 (a)." *Sam's Wholesale Club v. Riley*, 241 Ga. App. 693 (527 SE2d 293) (1999). "Because the clearly erroneous test is in effect the same standard as the any evidence rule, appellate courts will not disturb fact findings of a trial court if there is any evidence to sustain them. . . ." (Citations omitted.) *Tampa Bay Financial v. Nordeen*, 272 Ga. App. 529, 531 (1) (612 SE2d 856) (2005).

So viewed, the evidence shows that in approximately January 2006, Rahman and Evonne Eckenroth, the owner of LHR, began discussing the possibility of Rahman purchasing a home from LHR. On March 3, 2006, the parties executed a document captioned "Contract For Sale and Purchase" (the "Contract") under which LHR agreed to sell and Rahman agreed to purchase certain real property in Lawrenceville (the "Property") for $259,900. Under the terms of the Contract, Rahman was to pay $40,000 at closing with the balance of the purchase price to be financed by LHR at an annual interest rate

of 9.5 percent. Attached to the Contract was an "amortization schedule," initialed by each of the parties, which reflected that Rahman would make monthly mortgage payments on the owner-financed balance in the amount of $1,849.04, with payments being due on the 14th of each month.

The Contract further provided that the closing was to take place on March 3, 2006, at which time LHR would provide Rahman with a warranty deed conveying the Property to her, subject to the purchase-money mortgage. With respect to default, the Contract stated:

> a. Default by Purchaser. If Purchaser fails to perform this [Contract], the deposit this day paid by Purchaser shall be retained by . . . Seller as consideration for the execution of this [Contract]. In such event the parties agree that said sum shall constitute liquidated damages since both Purchaser and Seller agree that actual damages for default or breach of contract could not readily be ascertained as the Date of execution of this [Contract].

> b. Default by Seller. If Seller fails to perform this [Contract], the aforesaid deposit shall be returned to Purchaser and this shall be the sole remedy of Purchaser under this [Contract].

The parties executed the Contract on the same date specified therein as the closing date for the transaction. At that time, Rahman tendered the $40,000 down payment required at the time of closing and Eckenroth provided her with a key to the residence located on the Property, but did not provide her with a warranty deed. Rahman made the monthly mortgage payments called for under the Contract from March until August 2006. In September 2006, counsel for Rahman sent a demand letter to Eckenroth, claiming that LHR had breached the Contract by, among other things, failing to provide Rahman with the warranty deed for the Property. The letter demanded the return of Rahman's down payment, as well as all mortgage payments made under the Contract.

LHR then instituted the current action against Rahman in magistrate court, seeking a judgment for unpaid rent and a writ of possession for the property. After Rahman counterclaimed for the return of her down payment, the case was removed to state court, and LHR amended its complaint to assert a claim for breach of contract and sought liquidated damages in the amount of $40,000.

Following a bench trial, the trial court found that the liquidated damages clause in the Contract was unenforceable as a matter of law. The trial court further found that, regardless of the enforceability of the liquidated damages provision, LHR's "substantial breach" of the

Contract barred it from recovering liquidated damages, and that Rahman was entitled to a refund of her down payment. The trial court also held that, because LHR was unable to provide Rahman with the warranty deed for the Property, LHR was entitled to the writ of possession and a reasonable rent for the months of September 2006 through May 2007. The trial court determined that the amount Rahman had been paying as a monthly mortgage payment represented a reasonable monthly rent, and therefore awarded LHR $16,641.36 in unpaid rent, to be set off against the $40,000 LHR owed Rahman. LHR now appeals from the money judgment entered against it and in favor of Rahman in the amount of $23,358.64.

1. LHR first argues that the trial court erred in construing the Contract as a purchase and sale agreement, instead of a lease-purchase agreement. We disagree.

LHR's argument that the Contract must be construed as a lease-purchase agreement is based solely on the testimony of Eckenroth, who stated that the parties intended for Rahman to lease a home from LHR for a year to help Rahman reestablish her credit. Citing this testimony, LHR argues that the intent of the parties must control any interpretation of the Contract.

LHR's position, however, ignores entirely the testimony of Rahman, who stated that the parties intended the Contract to provide for the purchase and sale of real property. Rahman's testimony, standing alone, is sufficient to support the trial court's conclusion that the parties intended their agreement to be one for the purchase and sale of the Property. See *Tampa Bay Financial*, supra, 272 Ga. App. at 531 (1) ("[C]onflicting evidence in the record satisfies the 'any evidence' test.") (citation omitted).

More importantly, LHR's position fails to acknowledge the principle that when construing a contract a court will look to parol evidence to determine the parties' intent only where the written document is ambiguous. See *UniFund Financial Corp. v. Donaghue*, 288 Ga. App. 81, 82-83 (653 SE2d 513) (2007) ("Parol evidence is not admissible to contradict or construe an unambiguous contract.") (citation and punctuation omitted). The question of whether a contract is ambiguous represents a question of law for the court. See, e.g., *Sharple v. AirTouch Cellular of Ga.*, 250 Ga. App. 216, 218 (551 SE2d 87) (2001).

Here, the Contract reveals no ambiguity as to whether the parties intended for it to serve as a purchase and sale agreement or a lease-purchase agreement. Rather, the entire document supports the conclusion that the Contract was intended to be for the purchase and sale of the Property. Not only is the document captioned "Contract For Sale and Purchase," it also refers to the parties as "Buyer" and "Seller," sets forth a purchase price, and delineates the terms of

mortgage payments. The agreement also contains provisions that would be unique to a contract for the sale of realty, such as the seller's obligation to provide the buyer with a title commitment and a warranty deed at the "closing" of the sale. Nowhere does the document refer to a lease or provide for the payment of rent, nor does it employ language indicative of a lease — i.e., terms such as "lessor and lessee" or "landlord and tenant." Given the clear and unambiguous nature of the language contained therein, the trial court correctly concluded that the Contract was a purchase and sale agreement.

2. LHR also claims that, under the terms of the Contract, Rahman's failure to pay rent on the property while residing there entitles LHR to retain her $40,000 down payment as liquidated damages. Again, we disagree.

The Contract clearly states that if LHR failed to perform certain obligations thereunder, Rahman would be entitled to the return of her down payment. LHR's obligations included presenting Rahman with a warranty deed subject to the purchase money mortgage. Eckenroth testified that as of the date of trial, LHR had not provided Rahman with such a deed.[1] The trial court correctly concluded that LHR's admitted failure to perform its obligations under the Contract bars it, as a matter of law, from seeking to enforce the liquidated damages provision. See *Clark's Super Gas v. Tri-State Systems*, 129 Ga. App. 650, 651 (200 SE2d 472) (1973) (it is incumbent upon one seeking to enforce a contract "to establish that it ha[s] complied with the conditions of the contract"). Moreover, under the express terms of the Contract, LHR's failure to perform entitled Rahman to a return of her down payment.

In light of the foregoing, we affirm the trial court's order entering a monetary judgment in favor of Rahman in the amount of $23,358.64.

*Judgment affirmed. Barnes, C. J., and Smith, P. J., concur.*

DECIDED MARCH 26, 2008.

*Webb, Tanner, Powell, Mertz & Wilson, Robert J. Wilson, Jody C. Campbell*, for appellant.

---

[1] Indeed, Eckenroth's testimony establishes that LHR was incapable of providing Rahman with a warranty deed at the time it accepted her down payment. Eckenroth explained that she contracted to purchase the Property less than a month before contracting to sell the same to Rahman. That purchase, in turn, was financed by the previous owner of the Property, with Eckenroth having the option of obtaining financing from another lender and then closing the transaction. Eckenroth, however, would not receive a deed to the Property until she had paid the purchase price in full. Eckenroth did not close on that sale, and therefore did not receive a deed to the Property, until shortly before trial in April 2007.