A08A0041. DABDOUB et al. v. GLOBAL HOME IMAGE, LLC.
(661 SE2d 669)

BARNES, Chief Judge.

Mohammad Braiwish, Sayyah Shammout, and Salim Dabdoub (collectively, "the appellants") sued Zeyad Salahat, their former partner in a real estate venture, for slander to title and breach of contract.[1] They also sought to quiet title to properties bought for the venture. Salahat answered, denying liability and asserting a counterclaim to recover funds he contributed to the partnership, as well as his share of alleged profits. Following a bench trial, the trial court directed a verdict for Salahat on the appellants' claims and awarded him $33,500 on his counterclaim. The appellants seek appellate

---

[1] The appellants also sued Global Home Image, LLC, and Housemax, LLC, companies that performed renovation work on the investment properties. The claims involving those companies, however, are not at issue in this appeal.

review, but they do not challenge the dismissal of their claims. Instead, they argue only that the award to Salahat was against the weight of the evidence. For reasons that follow, we affirm.

"On appeal from a bench trial, we construe the evidence in favor of the judgment and will not disturb fact findings of a trial court if there is any evidence to sustain them." (Citation and footnote omitted.) *Hampshire Homes v. Espinosa Constr. Svcs.*, 288 Ga. App. 718, 719 (655 SE2d 316) (2007). The trial court — not this Court — resolves issues of witness credibility, and "conflicting evidence in the record satisfies the 'any evidence' test." (Citation omitted.) *Tampa Bay Financial v. Nordeen*, 272 Ga. App. 529, 531 (1) (612 SE2d 856) (2005).

Viewed in this manner, the evidence shows that Salahat was a professional real estate investor when he met the appellants. He and Dabdoub initially formed a partnership to purchase investment houses, and Shammout and Braiwish later joined the venture. The partnership bought two homes in Atlanta, one on Woodland Avenue and the other on Mathews Street. The partners planned to refurbish and sell the houses, splitting any profits equally among them.

Salahat arranged for Global Home Image, LLC, and Housemax, LLC, to renovate the properties. According to Salahat, when those companies sought payment for the work, his partners failed to respond, and he invested his own money to cover repair costs. Explaining his role in the partnership, Salahat asserted that he found the properties, located financing, contributed capital by providing renovation funds, and oversaw the renovation work.

At some point, Salahat fell out of favor with the appellants, and they told him that he had been "kicked out of the partnership." Salahat then filed liens against the properties for the cost of work he performed, causing the appellants to sue him for slander of title and breach of contract, as well as to perfect title to the investment houses.

Despite the liens, the Woodland and Mathews properties ultimately sold for substantially more than their original purchase prices. As to the Woodland property, Salahat testified that, after reimbursing the individual partners for their out-of-pocket expenses, including the $24,000 he spent in renovations, each should have received a profit distribution. He similarly testified that, following reimbursement for partnership expenditures on the Mathews Street property (such as his $9,500 renovation investment), the sale of that property should have resulted in a small profit for each partner.

The record shows, however, that Dabdoub, Shammout, and Braiwish neither reimbursed Salahat for his expenses nor paid him any profits. Shammout admitted that he and the other appellants received a monetary distribution from the sale of the Woodland

property, but claimed that any gain in the Mathews sale was eroded by costs incurred while they "were holding [the] property."

The trial court directed a verdict for Salahat on the appellants' claims. As to the counterclaim, it ruled that Salahat was entitled to recoup his out-of-pocket expenditures. But it denied Salahat's profit-based claim, concluding that the property sales generated no profit. Accordingly, it entered judgment for Salahat against the appellants jointly and severally for $33,500 — the amount invested by Salahat to renovate the Woodland Avenue and Mathews Street houses.

1. The appellants first argue that Salahat is not entitled to recover $24,000 in expenses on the Woodland property because such recovery "favors Salahat over and above his partnership interest." The appellants assert that Salahat is only entitled to his share of "net profits" — or just over $15,000.

Salahat, however, presented evidence that he expended $24,000 on renovating the Woodland home. And despite the appellants' claim that they never "got back any of the money they put into the Woodland property," the evidence reveals a monetary distribution to them following the sale. The appellants have pointed to no *evidence* that those amounts did not cover their expenses or that the sale proceeds were insufficient to reimburse Salahat for his out-of-pocket costs.

The trial court ultimately determined that the Woodland investment produced no profit. That does not mean, however, that the sale proceeds were inadequate to cover expenses. As commonly defined, the term "profit" is "the gross proceeds of a business transaction less the costs of transaction" or the "[g]ain realized from business or investment over and above expenditures." Black's Law Dictionary, at 1090 (5th ed. 1979). The Woodland sale generated $124,000 in cash for the partnership. Although the trial court apparently found that all of this money was needed to cover expenses, resulting in no *profit*, at least some evidence supported the conclusion that Salahat was entitled to $24,000 in expense reimbursement from the Woodland proceeds. The trial court, therefore, did not err in awarding this amount to Salahat.

2. In two related claims of error, the appellants argue that the trial court improperly found them jointly and severally liable for Salahat's expenditures on the Woodland and Mathews properties. According to the appellants, two different partnerships operated these investments. They assert that only Salahat, Shammout, and Dabdoub were involved in the Woodland venture, insulating Braiwish from liability for Woodland-related expenses. They further claim that because the Mathews Street partnership consisted of Salahat, Braiwish, and Dabdoub, Shammout has no Mathews liability.

We disagree. Braiwish, Dabdoub, and Shammout testified that all four men were partners on both investments. Although the record contains some conflicting evidence on this issue, the appellants' testimony permitted the trial court to find that the four men were partners in the overall venture. See *Tampa Bay Financial*, supra, 272 Ga. App. at 531 (evidence sufficient despite conflicting evidence). Accordingly, these claims of error provide no basis for reversal.[2]

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED APRIL 25, 2008.

Sayyah Shammout, *pro se.*
Mohammad Braiwish, *pro se.*
Salim Dabdoub, *pro se.*
*David J. Reed*, for appellee.

---

[2] In his appellate brief, Salahat asks us to sanction the appellants for bringing a frivolous appeal. After due consideration, the request is hereby denied.