A08A1569. ANTONIOS v. GWINNETT CLINIC, LTD.
(668 SE2d 531)

RUFFIN, Presiding Judge.

Dr. Dawit Antonios, a physician, was employed by Gwinnett Clinic, Ltd. Gwinnett Clinic sued Antonios for breach of his employment contract and, after a bench trial, was awarded damages and attorney fees. Antonios appeals and, for reasons that follow, we affirm.

This case turns on the enforceability of the employment contract between Antonios and Gwinnett Clinic, and the facts at issue are not disputed. Antonios and Gwinnett Clinic entered into an employment contract that contained, among other provisions, the terms by which either party could terminate Antonios's employment. The relevant section provides:

> Termination Without Cause: Employer or Employee may, without cause, terminate this [A]greement by giving to Employee or Employer respectively 180 days['] written notice. . . . If either party shall terminate this Agreement without cause, without giving adequate notice as per this paragraph, the party terminating this Agreement shall pay the other party . . . an amount equal to $355.00 . . . for each day the termination period was short of the required notice period as liquidated damages, as there is no satisfactory way to determine the actual damages under these circumstances to any party.

The employment contract also provided that, after his employment with Gwinnett Clinic ended, Antonios would be responsible for obtaining his own policy of professional liability insurance, or "tail

coverage,"[1] and that he must provide proof of such coverage to Gwinnett Clinic before his final salary would be paid. And under the employment contract, in the event of litigation over the contract, the attorney fees of the prevailing party are to be paid by the other party. Both Gwinnett Clinic and Antonios signed the employment contract.

In a letter dated April 2, 2007, Antonios notified Gwinnett Clinic that his last day of work would be June 30, 2007. Gwinnett Clinic responded by letter, informing Antonios that he had given only 90 days' notice, rather than the 180 days' notice required by the contract, and that he would accordingly be liable for damages of $31,950. It also reminded Antonios that proof of tail coverage was required before his final salary would be paid. Antonios stopped working for Gwinnett Clinic on May 7, 2007. Gwinnett Clinic notified Antonios that, under the terms of the employment contract, his notice was deficient by 144 days and demanded liquidated damages in the amount of $51,120. It also requested proof that he had obtained tail coverage before his final paycheck would be released.

When Antonios did not comply with its requests, Gwinnett Clinic brought the present action. Antonios filed a counterclaim alleging slavery, that the employment contract was a contract in restraint of trade, breach of contract, and frivolous litigation. After a bench trial, the trial court found in favor of Gwinnett Clinic and ordered Antonios to pay $69,373 in damages for breach of contract and $28,676.63 in attorney fees. On appeal, Antonios contends that the trial court erred (1) in finding that the liquidated damages clause in the employment contract was enforceable and (2) in ruling that he was obligated to purchase tail coverage. We disagree.

1. Antonios first argues that the liquidated damages clause contained in the employment contract was unenforceable because the parties made no effort to estimate the probable loss. The determination of whether a specified sum is enforceable as liquidated damages is a question of law.[2] And on appeal from a bench trial, we apply a de novo standard of review to questions of law decided by the trial court.[3]

In Georgia, "[i]f the parties agree in their contract what the damages for a breach shall be, they are said to be liquidated and, unless the agreement violates some principle of law, the parties are

[1] Gwinnett Clinic carries a claims-made insurance policy that covered Antonios for claims made during his employment. Tail coverage, also known as an extended-reporting endorsement, provides coverage for a physician for claims made after his employment has ended.

[2] See *Physician Specialists in Anesthesia v. MacNeill*, 246 Ga. App. 398, 400-401 (1) (539 SE2d 216) (2000).

[3] See *Lifestyle Home Rentals v. Rahman*, 290 Ga. App. 585 (660 SE2d 409) (2008).

bound thereby."[4] We will enforce a liquidated damages clause if "(1) the injury caused by the breach is difficult or impossible to estimate accurately, (2) the parties intended to provide for damages rather than a penalty, and (3) the stipulated sum is a reasonable estimate of the probable loss."[5] The burden is on the party who defaults on the contract — in this case Antonios — to prove that a liquidated damages clause is unenforceable.[6]

The physician who manages Gwinnett Clinic, Dr. Shah, testified that the sum of $355 per day as liquidated damages was calculated by taking Dr. Antonios's salary and dividing it by 365 days "in order to fully compensate the employee if the contract was terminated" by Gwinnett Clinic. Shah stated that Gwinnett Clinic's damages from the early departure of Antonios, including lost patient referrals and lost revenue, were "significantly higher" than the liquidated damages provided for, but "[s]ome are evident, some are very difficult to evaluate." Gwinnett Clinic did not intend to penalize its doctors by including a liquidated damages clause in their employment contracts, as "[i]t only partially recovers our actual losses." Antonios has cited no contrary evidence. Given this testimony, we conclude that the liquidated damages clause was enforceable. The financial harm caused by Antonios's breach of the employment contract is difficult to estimate accurately, there is no evidence that the parties intended to create a penalty, and the stipulated sum was arrived at as a reasonable estimate of Antonios's anticipated loss and, if anything, was less than Gwinnett Clinic's anticipated loss. Accordingly, Antonios has not met his burden of proving that the liquidated damages clause was unenforceable.[7]

2. Antonios next alleges that the trial court erred in finding that he "was obligated to purchase tail coverage while he was still employed by [Gwinnett Clinic]." Antonios does not, however, cite where in the record such ruling occurred. We surmise from the trial court's judgment in the amount of $69,373 that it awarded Gwinnett Clinic $51,120 in liquidated damages and also the cost of tail coverage for Antonios, as he never obtained it. The cost for appropriate tail coverage for Antonios was $18,253.

Antonios contends that he was unable to purchase tail coverage because Gwinnett Clinic wrongfully withheld his salary. But the employment contract clearly stated that he must provide proof of such coverage before his final salary would be paid. He has shown no

---

[4] (Punctuation omitted.) *Turner v. Atlanta Girls' School*, 288 Ga. App. 115, 116 (653 SE2d 380) (2007).

[5] Id.

[6] See id.

[7] See id. at 118.

reason why the trial court should not have enforced this unambiguous term of the employment contract, and we therefore affirm the trial court's judgment.[8]

*Judgment affirmed. Andrews and Bernes, JJ., concur.*

### DECIDED OCTOBER 17, 2008.

*Ernest N. Tate*, for appellant.

*Webb, Tanner, Powell, Mertz & Wilson, James E. Carlson*, for appellee.

---

[8] See *Schwartz v. Harris Waste Mgmt. Group*, 237 Ga. App. 656, 661 (2) (516 SE2d 371) (1999).